ELLIS, Judge.
The defendant has appealed from a judgment awarding plaintiff the full amount of $5200.00 for dirt filling and leveling work done under written contract on a lot of ground owned by the defendant in the town of Denham Springs, Louisiana.
The Horne Enterprise, Inc., a Florida corporation interested in the restaurant business, purchased for the purpose of constructing a “Horne” restaurant a lot of land from L. A. Lard, Jr., which is somewhat in the shape of a parallelogram with each side line 200 feet in depth, the south line facing on U. S. Highway 190 being 312.76 feet long and the north boundary line being 278 feet in length. Thus the angles at the southeast and northwest corners of the lot are much sharper than those at the southwest and northeast comers of the lot. Mr. Hughes, a representative of the defendant company, requested that Mr. Lard obtain bids from dirt contractors to fill a portion of this lot. The plaintiff bid on this work and during the negotiations, Lard made a sketch or map showing the portion of the lot which was to be filled and which, it is important to note, showed a distance along the side lines of 150 feet in depth measured from the highway right-of-way. Due to the shape of the lot and the southern boundary being 312.76 feet in length and the northern boundary being 278 feet, it can readily be understood that the further north from the southern boundary the narrower the lot and this sketch shows at 150 feet the distance across the northern boundary of the portion to be filled is 290 plus feet.
On March 3, 1962 the plaintiff wrote to L. A. Lard Oil Company, Denham Springs, Louisiana, the following letter which we quote:
“L. A. Lard Company
Denham Springs, La.
Dear Sirs:
I would like to quote you a firm quotation on filling the area per your sketch located on Highway 190 in Denham Springs, La.
Cut trees, remove old dwelling and fill area to road level with dirt. For the sum of $4,500.00 (Fourty five hundred dollars) per your sketch, provided this is accepted within 90 days.
Thanking you for the opportunity to quote on this job, I am
Yours truly,
by-.
Robin Hood”
The above offer was mailed to the defendant company along with a copy of the sketch or map showing the portion of the lot belonging to the defendant to be filled. No answer was received within the 90 days but on June 15, 1962 the defendant, Eskridge Construction Company, through Wilton Eskridge, wrote the plaintiff the following letter:
“Robin Hood Sand & Gravel Co.
Denham Springs, Louisiana
re: Hornes Restaurant Denham Springs, La.
Dear Mr. Hood:
This is to advise you that we accept your proposal to fill Horne’s site at *57 Denham Springs for the sum of $4,500.00 plus your charges for installing two 65' lengths of 24" corrugated pipe in the ditch for driveways. We would like for you to do as much filling as possible at the front of the lot between Horae’s property line and the highway leaving the ditch open. Leave enough fill off the back end of the property to compensate for that additional fill used at the front between the highway and Horne’s property line.
Yours very truly,
ESKRIDGE CONSTRUCTION COMPANY
Wilton Eskridge”
After receipt of this letter by the plaintiff there were further negotiations and a telephone conversation in which the defendants learned plaintiff had not included in his bid the filling of the highway right-of-way fronting the property, and, as a consequence, the contract in question in this suit was agreed upon and it is fully shown in a letter from the Eskridge Construction Company of date July 2, 1962 which is as follows :
“Robin Hood Sand and Gravel Company
Denham Springs, Louisiana
Attention: Mr. Robin Hood:
re: Hornes Restaurant Site
Dear Mr. Hood:
As per our telephone conversation proceed to fill Horne’s site to a depth of 150 ft. to road level. Also fill entire area between Horne’s property line and edge of paving except 150 lin. ft. of ditch leaving minimum width open for ditch. Also furnish necessary labor and materials to make connection, ex-ceptable to local authorities, with col-vert which crosses under highway, all for a sum of $5,200.00.
The site is to be left smoothed with a gentle slope to the front except that the back 50 ft. shall be sloped to the rear.
Yours very truly,
ESKRIDGE CONSTRUCTION COMPANY
Wilton Eskridge”
The record shows when the plaintiff received the acceptance of his first offer for a consideration of $4,500.00 he began the work on the lot and had put 3,927 yards of dirt fill on the lot, and after the new agreement which was for a consideration of $5,200.00 he put a total of 4,814 yards altogether, at which time he stopped and had the Civil Engineer, Mr. J. C. Kerstens, who had surveyed the lot originally when Lard sold it to the defendant, to check his work by running grades on the filled portion. According to the plaintiff and Kerstens, in some spots the fill was high and in others low, and accordingly he put stakes to show the proper grade over the entire property to be filled. In the beginning, Kerstens had been called upon by the plaintiff to stake off the 150 feet, and he had in his possession at the time the original sketch, heretofore referred to, as well as the last letter containing the consideration of $5,200.00 and, accordingly, he measured 150 feet along the side lines. After the plaintiff notified the defendant of the completion of the work, a representative came and inspected the lot, made no complaints, and told plaintiff that when he returned to South Carolina he would send him a check. Instead of receiving a check, plaintiff, on July 13, 1962 received the following letter from the Esk-ridge Construction Company:
“Robin Hood Sand & Gravel Company
Denham Springs, Louisiana
Attention: Mr. Robin Hood
re: Hornes Site Work.
Dear Mr. Hood:
After seeing you several days ago, I layed Horne’s building out and I meas *58 ured the depth to which you filled the site and found that you have not filled the site to 150' depth as agreed upon. When you have cleared this site and filled the site as was agreed, I have asked Mr. Eddleman to advise this office, and at that time payment will be mailed to you.
Yours very truly,
Eskridge Construct Company Wilton Eskridge'’
Upon Eskridge’s failure to pay plaintiff, he filed a lien against the property and then this suit against Eskridge Construction Company, the contractor, and Horne Enterprise, Inc., the owner of the property.
It is the defendant’s contention the plaintiff should have filled the lot, not a distance of ISO feet measuring along the side lines, but ISO feet measured perpendicular to the south boundary. Defendant also contends plaintiff did not even fill the lot in accordance with the contract of ISO feet measuring along the side lines, nor remove some trees which he had cut down and pushed to the rear of the lot, nor some stumps, and they had employed a Mr. Campbell, who was engag'ed in dirt work and grading, to complete what they contended the plaintiff should have done under his contract. Campbell testified he had charged $198.00 to move the stumps and the trees which had been pushed to the rear of the property and 2037 yards at $1.00 a yard for dirt to complete the fill over the lot to a depth of ISO feet measured perpendicularly from the south line. The defendants therefore claim they are entitled to a credit of $2235.00, which was the amount paid Campbell.
As to the defendants’ first contention, there is nothing in the contract which states the plaintiff was to measure 150 feet perpendicular rather than along each side in order to obtain the depth to be filled. As heretofore stated, the first map or sketch which was given by Lard to plaintiff showed ISO feet to be measured along the side lines, and a copy of this sketch had been mailed to Mr. E. T. Hughes, Executive Vice President of Horne Enterprise, Inc., on March 3, 1962 by Mr. Lard along with the letter of that date. The defendant did not accept the plaintiff’s first proposal within the ninety days but later did accept the proposal by their letter of June 15, 1962, supra. In this letter there was no mention of the ISO feet other than as would be included in an acceptance of the plaintiff’s proposal “to fill'Horne site at Denham Springs * * * ”. However, in the second letter of July 2nd, 1962 which changed the acceptance in the previous letter, they referred to a telephone conversation and directed the plaintiff to “proceed to fill Horne site to a depth of ISO feet to road level * * * ”. No where in this letter or the previous one was any mention made specifically of removing stumps or trees, and in neither letter do they designate that the depth was to be measured perpendicularly even though the evidence shows a representative of the Horne Enterprise, Inc. had received a copy of the original sketch showing the measurement of 150 feet along the side lines of the lot. There is no testimony whatsoever the plaintiff was ever notified or told he should measure the ISO feet perpendicularly from the south line, other than the opinion of interested witnesses that he should have done so. The contract was drawn by the defendant, Esk-ridge Construction Company. It is shown the defendants also had a representative in a Mr. Eddleman, who watched the plaintiff do the work of filling the dirt in “the biggest part of the time,” and testified the plaintiff “had a big cat there and he would grade it out with the cat and pack it with the cat.” This gentleman also admitted he saw the stakes placed on the lot by engineer Kerstens “for elevations and ISO feet back.” Kerstens testified he measured the 150 feet along the side lines in placing these stakes. If Mr. Eddleman thought the 150 feet should have been measured perpendicularly he at no time said anything to the plaintiff nor apparently to his company. The testimony also reveals after plaintiff notified the Eskridge Company he had completed the work, Mr. Eskridge *59 came to the site, walked over it with the plaintiff, talked to the latter about the trees which had been pushed to the rear of the lot which plaintiff agreed to clean up some but did not say anything to plaintiff that he had not filled it 150 feet in depth perpendicularly which the defendants contend was intended by the contract. He stated 'he had not said anything to the plaintiff because just walking on the site he could not tell whether it was right or not “with■out putting the instruments on it.”
Particularly applicable to the question now before the court is Article 1958 of our LSA-Civil Code, which is as follows:
“But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.”
The defendant, Eskridge Construction Company, is responsible for any doubt or obscurity which has arisen for the want of a provision in the contract which they proposed and which was accepted by the plaintiff as per its letter of July 2, 1962, supra. Due to the irregular shape of the lot they should have realized there would be doubt or obscurity as to whether the 150 feet should be measured along the sides of the lot or on a line perpendicular to the highway or southern boundary. The 150 feet was clearly marked by big green wooden stakes which were seen by their representatives and by Mr. Eskridge himself, and no comment or notice was given to plaintiff that the measurements had been made in an erroneous manner. Further, at the time Eskridge looked over the lot with the plaintiff after he had notified them of the completion of his contract, nothing was said about the erroneous measurement of 150 feet, nor that the work was not in accordance with the contract, and it was only after a measurement was made for the building which showed 150 feet in depth measured along the side lines was not sufficient to take care of the building that plaintiff was then notified he had not completed his contract by filling 150 feet in depth as shown by the letter from Eskridge to the plaintiff of date July 13, 1962, supra.
In accordance with the above and foregoing facts and the law we are of the opinion the measurement by the plaintiff of 150 feet along the side lines was in compliance with his contract.
To the plaintiff’s petition the defendants filed a general denial and Eskridge subsequently filed an amended answer in which it alleged “in order to complete the filling of the lot to the agreed depth of 150 feet, measured perpendicular to the highway forming the southern boundary of said property, respondent was obliged to spend, and did spend, the sum of $2,235.00 for clearing the stumps and pushing up the trees on the property and purchasing additional fill in the amount of '2,037 cubic yards at a price of $1.00 per cubic yard.” The defendant further alleged if the court should determine the depth of the lot to be filled should be measured along the boundary of said site rather than along a line perpendicular to the highway, 1,600 yards was necessary to complete the fill of that area to the road level, wherefore, the Esk-ridge .Construction Company prayed the plaintiff’s suit be dismissed, and in the alternative should there be judgment in favor of the plaintiff that it be subject to reduction in the sum of $2,235.00.
Counsel for plaintiff has cited to this court the case of Merrill v. Harang, La. App., 198 So. 386, which involved the building of a levee by a contractor, decided by this court as setting forth the law as to the burden of proof in such a case wherein this court held:
“In building and construction contracts, where the owner admits the contract and the fixing of a price for the entire work and seeks to escape liability for the payment of all or part of the contract price on account of defects *60 in the work, or a failure to complete the job according to the contract, the owner bears the burden of proving the defects and omissions on the part of the contractor in his execution of the work.”
Under the above law the burden of proving the defects and omissions charged on the part of the plaintiff in his execution of the work was upon the defendants in this case as they admit the contract and the price for the entire work but seeks to escape liability for the payment of the contract price on account of alleged defects in the work, and a failure to complete the job according to the contract.
Under our ruling as to the correctness of the measurement of the 150 feet along the sides the question now before the court is whether the defendants have borne the burden of proof showing the plaintiff did not fill the lot such a distance to road level as contracted and clear the site of stumps and trees to this distance.
The record reveals that just prior to the completion of the work plaintiff called engineer J. C. Kerstens, who had originally surveyed the lot for the defendant, to take grades to see if the contract had been complied with. Kerstens testified in the case that he originally staked out the 150 feet along the side lines for the plaintiff and also set grade stakes by taking the level of the highway opposite the center of the south boundary line of the lot and when he was called upon to check the plaintiff’s work upon completion he found some parts high and some low and the plaintiff completed this work according to his stakes. It is also shown the highway in front of this property is not level and we believe this engineer properly used the high point opposite the center of the south boundary line of the property.
After Eskridge had laid out the building site on the lot and found the 150 feet measured along the side lines would not be sufficient and by letter of July 13, 1962, supra, had notified the plaintiff he had not filled the site to 150 foot depth as agreed upon and stated, “When you have cleared this site and filled the site as was agreed I have asked Mr. Eddleman to advise this office and at that time payment will be mailed to you,” he employed a civil engineer, Mr. John Fell, to examine the site and the work of the plaintiff. Approximately one month after the plaintiff had notified the defendants of the completion of his work, this engineer made a topographical survey. At this time it is well to note the building had been constructed on the lot. This witness testified it would take approximately 1150 cubic yards of dirt to fill to road level the 150 feet measured along each of the side lines. This is in direct conflict with the testimony of Kerstens.
The testimony of the two engineers would be very hard to reconcile but it is to be noted the contract did not call for any special compaction, although the plaintiff used a large bulldozer which would do quite a bit of compaction as it ran back and forth in pushing the dirt and leveling the site. Additionally it is shown the site was low and the trucks and other vehicles and equipment bringing material for the building and used in and around the building while it was being constructed could have further compacted the dirt so as to lower it below street level.
The defendants have also offered the testimony of T. M. Campbell, who was employed to dirt fill the site back 150 feet from a perpendicular measurement rather than along the side lines, including refilling some of the site within the 150 foot depth measured along the side lines, which the defendants contend should have been done by the plaintiff. This contractor started the work about the last week in August. He testified he put 2,037 yards over most of the area, “excepting where the building was being constructed, back to where the engineer had driven stobs at the back corners, * * * ”. He also moved some stumps and logs “from the northeast corner down to the northwest corner then *61 about way from the northwest corner back to the southwest corner,” for which he charged $198.00. We are unable to decide from the testimony just how many stumps and logs were removed from the ISO feet in depth measured along the side lines which was covered by the plaintiff’s contract. This witness frankly testified it was impossible for him to estimate what percentage of the dirt he put on the area included in the plaintiff’s contract.
From this record we are of the opinion the defendants have failed to show by a preponderance of evidence that the work done by the plaintiff was not in substantial compliance with his contract, and, on the contrary, we think the plaintiff has shown a substantial compliance.
For the above and foregoing reasons the judgment of the District Court is affirmed.
Affirmed.