CULPEPPER, Judge.
The plaintiff, O. C. Kemp, seeks to reform an instrument whereby he acquired .certain mineral interests from the defendant, G. A. Beasley. The alleged basis for the suit is that due to a “typographical error” the instrument does not reflect the true intention of the parties. From an adverse judgment plaintiff appealed.
The substantial issue is factual, i. e., whether plaintiff has sustained the burden of proof required in cases of this type.
The facts show that in December of 1962 an oil well was completed on 20 acres of land in Sabine Parish. It is a flowing well with- a potential production of about 400 barrels per day. Several people owned working interests in this well, among whom were Doyle D. Carter and Isaac N. Carter, each of whom owned an undivided Via of the working interest or the equivalent of an undivided %2 of the whole, and G. A. Beasley, defendant in these proceedings, who owned an undivided Vml of the working interest or the equivalent of an undivided Yie of the whole. Beasley and the Carters are related by marriage and live in Sabine Parish.
The plaintiff, O. C. Kemp, is in the insurance business in Shreveport, Louisiana, but he also buys and sells mineral interests. On March 13, 1963, Kemp purchased fi’orn the Carters their combined Yi2 of the working interest, or^ the equivalent of an undivided %6 of the whole, for the sum of $4,000, with the provision that Kemp receive the “accumulated runs” of about $1,000. Kemp also offered to buy Beasley’s interest, which was the same as the Carters’ combined interests, for the same price, but Beasley refused.
During the next few weeks several offers and counteroffers were made between plaintiff and defendant by telephone and personal contact. Defendant, who works as a driller, owned interests in two other wells in the area and testified that he wanted to sell all of his interests because he planned to go to a foreign country to work in the oil fields there. He testified that as part of a package deal for all these interests he offered to sell his ownership in the particular well in question here for the low price of $4,750, with Beasley to receive the accumulated oil runs of about $1,000.
Finally, during the eaidy part of June, 1963, plaintiff and defendant reached the agreement in question here during a telephone conversation between plaintiff in Shreveport and defendant in Sabine Parish. Kemp contends the agreement reached was a price of $3,750 for Beasley’s entire Ho of the whole interest, with Kemp receiving the accumulated runs, which by this time were about $1,200. Beasley contends the agreement reached in the telephone conversation covered only 14 of his interest, i. e., %2 of the whole, but agrees Kemp receives the accumulated runs.
Following this telephone conversation Kemp went to a public stenographer whom he instructed as to how to draw the assignment in question, using the Carter assignment as a form and making the appropriate changes. The assignment, as- *427 drawn by the stenographer, signed and recorded, contains the following provisions:
“It is stipulated, understood and agreed that the interests conveyed above are as follows:
“(1) By G. A. Beasley, an undivided one-twenty-fourth (}4t) of the Working Interest or the equivalent of an undivided one-thirty-second (Y&z) of the whole (%).
“This assignment is made subject to any prior recorded reservations of Overriding Royalty Interest, but conveys and assigns all of Assignor’s interests in the above described tracts, leases, and well.
“It is further stipulated and agreed that Assignee shall be entitled to receive and be paid all of the royalties and revenues accrued and due or to become due to Assignor from this tract and well, as well as all future royalties and revenues to which Assignor would be entitled under the interests conveyed herein.”
From the above it is seen that the contract is ambiguous. The assignment describes the interests conveyed as Vzi of the working interests or the equivalent of Ys2 of the whole but “conveys and assigns all of assignor’s interest in the above described tracts, leases and well.” Beasley actually owned an undivided Yis of the working interest or the equivalent of an undivided Yi.6 of the whole.
Applicable here are several well established rules of law. Reformation is an equitable remedy to correct a written instrument to express the actual agreement between the parties. The burden is on the one seeking reformation to prove by strong, clear and convincing evidence that the instrument as written does not correctly express the true intention of the parties. Agurs v. Holt, 232 La. 1026, 95 So.2d 644; Walker v. Jim Austin Motor Company, 162 So.2d 135 (1st Cir.1964).
Every effort must be made to gather the intention of the parties from the written instrument itself, but where this is impossible, extrinsic evidence may be resorted to. Texaco, Inc. v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 451 (1963). Where the language of a contract is doubtful or ambiguous we must endeavor to ascertain the true intention of the parties. LSA-C.C. Article 1950. In case of doubt, the agreement must be interpreted against him who prepared it. Schreiner v. Weil Furniture Co., 68 So.2d 149 and the authorities cited therein; LSA-C.C. Article 1957. If the doubt or obscurity results from the lack of any explanation which one of the parties should have given or from any other neglect or fault of his, the construction most favorable to the other party shall be adopted. LSA-C.C. Article 1958; Hood v. Horne Enterprise, Inc., La.App., 159 So.2d 55; Bruno v. McCabe, La.App., 71 So.2d 245.
In a detailed and well considered written opinion the trial judge points out that the' instrument itself is ambiguous and extrinsic evidence may be considered. The testimony of plaintiff and defendant is in' hopeless conflict as to their true intention and does not help to resolve the question.
Much of the evidence was concerned with plaintiff’s attempt to show that $3,750 is an unreasonably high price for only one-half of the interest owned by defendant. But, as the trial judge points out, defendant first asked for $4,750, plus the accumulated runs, for his entire interest. He actually refused an offer of $4,000 for his entire interest in March of 1962; and by the time this agreement was reached about 3 months later, the accumulated oil runs were larger. As the trial judge states, there is no impressive reason why defendant would have agreed to sell for considerably less than he had demanded in prior negotiations. But, on the other hand, $3,750 for only one-half of defendant’s interest is considerably more than the plaintiff offered in the preliminary stages of the negotiations; and there is no impressive explanation as to *428 why he was finally willing to greatly increase the price. Defendant admits he considered this final offer of $3,750 for one-half his interest as a “premium price”.
We agree with the trial judge that plaintiff’s witness, Mr. Ed Gibbons, is entitled to little weight in determining the intention of the parties. Mr. Gibbons went with Mr. Kemp on one of his several trips from Shreveport to defendant’s home in Sabine Parish. Apparently Mr. Gibbons was also interested in buying mineral interests in the area. Gibbons had a map on which he testified defendant wrote his name, telephone number, the price of $4,500, and the fraction as the interest to be conveyed in the well in question. Beasley admits writing his name and telephone number on the map but denies writing the price or the fraction.
But, regardless of the above discussed inconsistencies in the evidence, the following facts are clear. After reaching the agreement with defendant by telephone, plaintiff had the instrument prepared by a public stenographer in Shreveport. Kemp admits that he read the instrument but failed to notice that the fraction was “%2” of the whole instead of “Vie”. He then took the instrument to the site of a drilling rig in Sabine Parish where defendant was working as a driller. Defendant left the job for a short time, read the portion of the instrument which stated that it conveyed only %2 of the whole, and, being satisfied that it was correct, he signed it. Plaintiff took the instrument and had it recorded. It was not until some time later that plaintiff says he discovered the “typographical error” and sought to have defendant execute a correction deed, but defendant refused.
It is clear that plaintiff is the one who prepared the instrument and any fault or neglect resulting in doubt or ambiguity lies with him. Under the above cited jurisprudence, the contract must be construed against him.
Another argument made by plaintiff is that after the assignment in question was executed he paid all of the operating costs of the well; and defendant paid none. Plaintiff argues this is a construction put on the contract by the parties following its execution and shows their intention. Shoreline Oil Corporation v. Guy, 189 So. 348 (La.App. 2nd Cir.1939). But, defendant’s explanation is that he paid the operating costs for January and February of 1963 and has not paid any since then because he has not been billed therefor by the operator; and that this operator sometimes waited 2 or 3 months to send bills. We agree with the trial judge that this does not constitute a construction placed on the contract by the parties which would be sufficient to sustain the burden of proof resting on plaintiff in this case. Defendant’s explanation is very plausible under the circumstances.
In the alternative, plaintiff prays that if we affirm the judgment of the lower court we should, as a matter of equity, amend that judgment to allow plaintiff recovery for the operating expenses he has expended on defendant’s behalf, “such operating expenses to be deducted from the oil runs now held in suspense by Scurlock Oil Company, a party to the suit.” Plaintiff asks a remand of this case for the purpose of taking evidence as to the amount of such expenses. We note that no such relief was prayed for in the lower court. It raises issues which were not before the lower court and should not be considered by us on appeal. The request for a remand is denied, without prejudice to plaintiff’s right to seek reimbursement for said operating expenses in other proceedings.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.