254 So.2d 62 (1971)
Stella W. CLARK, Plaintiff-Appellant,
v.
SEARS, ROEBUCK AND COMPANY, Defendant-Appellee.
No. 3623.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1971.
Pharis & Pharis by James A. Pharis, Jr., Alexandria, for plaintiff-appellant.
Provosty & Sadler by LeDoux R. Provosty, Jr., Alexandria, for defendant-appellee.
Walter J. Horrell, Baton Rouge, of counsel, for intervenor, appellee, appellant, State Hospital Board.
Before FRUGÉ, HOOD and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff, Stella W. Clark, filed this suit in tort against Sears, Roebuck and Company seeking the recovery of damages for injuries which she sustained while operating a riding type lawnmower purchased from defendant.
The machine in question was a 24-inch Craftsman Riding Lawnmower, Model No. 99J-808N which for all intents and purposes is identical to the Model No. 131.8090 and was manufactured for Sears by the George D. Roper Corporation. Plaintiff purchased the mower from the Sears, Roebuck and Company store in Alexandria, Louisiana, on August 28, 1964 and she was given an owner's manual for the Model No. 131.8090 machine. She used the mower for the remainder of the grass-growing season of that year and part of the next, but on May 21, 1965 she returned it to the Sears store with the complaint that she was experiencing difficulty in starting it. It was repaired and returned to her on May 29, 1965. On June 19, 1965 an accident occurred, resulting in the injuries that precipitated this suit.
There was a trial by jury which resulted in a unanimous verdict specifically finding *63 that there was no defect in the mowing machine and that plaintiff was guilty of negligence proximately causing the accident. Judgment was then rendered against plaintiff and for defendant, dismissing the former's suit at her cost. She appealed to this court.
We begin with the basic proposition that, a manufacturer or seller of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third party, who without fault on his part, is injured as a result of a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. It is, of course, incumbent upon the plaintiff bringing such an action to prove the elements forming a basis for recovery, i. e. that the product was defective and that the injury was reasonably foreseeable to the defendant. Weber v. Fidelity & Casualty Insurance Co. of New York, 259 La. 599, 250 So.2d 754, and cases therein cited; Stelly v. Quick Manufacturing Company, La.App., 246 So.2d 302, writs refused, 258 La. 767, 247 So.2d 864. With the law before us, we now turn to an examination of the evidence.
Plaintiff testified that when the mower was returned to her following the aforementioned repairs, it demonstrated a theretofore unnoticed tendency to "rear up", or raise its front wheels off the ground, when in motion. The malfunction, however, was not sufficiently pronounced to cause her any concern until the day of the accident. On that occasion she stated that she had been mowing along a row of bricks, which were imbedded in the ground to form a border for a flower patch, and had moved up against a row of chunks of concrete which formed a border for a second flower patch and extended perpendicularly from the line of bricks. It being her intention to back up, she reached down to put the machine in reverse gear, and in fact accomplished that maneuver. At that point she heard a "click", the steering handle turned violently, and the mower reared up to such an angle that she thought it would overturn on her. She either alighted or fell off the rear portion of the mower, landing on her buttocks and because the machine was coming at her, she pushed it with both her feet. She then scrambled to a standing position but the mower, which was still in reverse motion, somehow inflicted serious injury to her right foot. A neighbor then stopped the machine and removed plaintiff to a hospital.
Plaintiff put Mr. John E. Smith, manager of the hardware department at the Sears store in Alexandria on the stand under cross examination. He testified that it is indeed possible for mowing machines of the type considered herein to rear up and lift their front wheels off the ground. However, he said this was an uncommon occurrence which takes place only when power is applied to the rear wheels too suddenly, as by too rapid a release of the clutch when the engine is running at full power.
Plaintiff also offered the testimony of an expert in mechanical engineering, Professor Joseph H. Barnwell. This witness testified that the lawnmower in question was defective in design and manufacture for two principal reasons: 1) it lacked a dead man control, and 2) it lacked a detent plate which would prevent it from slipping in and out of gear accidentally.
He described the first of these, the dead man control, as a type of clutch that requires constant pressure in order to enable the machine to operate. Thus if the mower were to have such a device, the operator would be required to exert pressure, estimated to be around 15 pounds, on the clutch in order to keep the mower in motion and its blade rotating. Should the pressure be removed and the clutch released, all motion would automatically cease. Professor Barnwell testified that a number of rider mowers are equipped with such devices and that their installation is facile and inexpensive.
The second device, a detent plate which would make it necessary for the operator *64 to perform deliberate movements in order to shift in or out of gears, was likewise described by him as a simple and inexpensive improvement, and he presented sketches of what he considered to be the proper design for such a plate. He considered the change necessary because of his belief that the device which was actually on the machine made it possible for it to engage and disengage the gears inadvertently.
It was the professor's opinion that the accident occurred because of the inadequate detent plate and lack of a dead man's control. Thus he theorized that when plaintiff supposedly put the mower in reverse gear, she did not force the gear lever all the way back, enabling it to jump into forward gear. This sudden application of power would have caused the machine to rear up throwing plaintiff off the back end. He thought that as she fell she might have seized the gear lever and forced it back into reverse gear, thus enabling the mower to move backwards and cut her foot.
We consider significant Professor Barnwell's admission that he had never performed tests of any kind on the particular type of lawnmower involved in the case. His conclusions regarding the shifting characteristics of the transmission were based on a gearbox that he constructed from parts obtained from the defendant by ordering them according to the latter's owner's manual.
The defendant placed in evidence the testimony of its own expert, Mr. George E. Clark, who was the man responsible for the design of plaintiff's lawnmower. He stated that the machine was designed to conform to the standards of the American Standard Safety Specifications for Power Lawnmowers as approved May 27, 1964, a copy of which was filed in evidence. (We have examined the document and have found it to contain no requirement that dead man controls be provided on riding lawnmowers. Neither does it contain any requirement for a specific type of detent plate on the gear shift lever.) He went on to state that thousands of hours were spent testing hundreds of the machines and that they were found not only to meet, but to exceed the standards of the American Standards Association. He performed tests himself, other engineers performed them, and a number of mowers were distributed among consumers in various geographical locations to obtain their reactions.
Mr. Clark testified as to the three largest manufacturers of riding lawnmowers in 1964 and stated that he knew of none who were installing dead man controls on their machines at that time. He said that his own company had considered the use of such devices and had actually installed them on many prototype models, but had discarded them for safety reasons. He explained this by stating that it was revealed by the consumer tests that people would tire of keeping constant pressure on the clutch and would wire it down, thus negating its function.
As to the advisability of changing the design of the detent plate to prevent the accidental engagement or disengagement of gears, he considered such an occurrence to be extremely unlikely. He stated that it would be every bit as difficult to jam the lawnmower into gear without depressing the clutch as it would be to do so in an automobile, and that any attempt to engage a gear without depressing the clutch would produce a great deal of noise and would very likely fail. Thus he considered the detent plate that was actually on the mower to be perfectly adequate.
Mr. Clark opined that the accident occurred strictly because of error on the operator's part. He theorized that the plaintiff did indeed put the machine in reverse gear as she testified, but that when it began to move backwards its left rear wheel ran up against the aforementioned brick border and became wedged against a brick. Plaintiff admitted that she did not have a secure grasp on the steering handle as she was using only one hand and this, combined with the backward motion of her body could have caused her to fall off *65 the mower when it came to a sudden stop against the bricks. If the impact only pushed her farther back on the seat, it is quite possible that the left rear wheel began to negotiate the brick thus tilting the mower and causing plaintiff to fall from her already precarious position thereon. The mower then continued backwards, injuring plaintiff's foot.
The jury saw and heard these and other witnesses testify, and specifically concluded that there was no defect in the lawnmower and that plaintiff was guilty of negligence, thus they obviously accepted the testimony of Mr. Clark over that of Professor Barnwell. This was their prerogative and in the absence of manifest error on their part, we are not free to substitute our judgment for theirs.
We see no manifest error herein and in fact find that there is ample evidence in the record to sustain the jury's verdict. Accordingly we affirm the judgment of the district court at appellant's costs in both courts.
Affirmed.