STOULIG, Judge.
This is an appeal from an adverse judgment, based upon a jury verdict, condemning the appellant, Lakeside Theatres, Inc. (“Lakeside”), to pay appellee, Twentieth Century-Fox Distributing Corporation (“Fox”), the balance of $37,500 due under a minimum guarantee specified in the contract to exhibit the motion picture, “Doctor Dolittle.” Appellant’s reconventional demand for $21,078.10 against Fox allegedly representing the unexpended portion of the rental deposit of $37,500 was rejected by the jury.
On March 29, 1967, Lakeside, acting through its president, W. H. Cobb, directed a letter to Fox expressing its desire to negotiate for the road show exhibition of the motion picture, “Doctor Dolittle.” Shortly thereafter, on May 22, 1967, appellant made a formal letter offer to Fox to exhibit the picture, proposing a firm guarantee of $65,000 and a weekly rental of 90% of the gross revenues over the house expenses of $3,400. This offer being unacceptable, appellant, on June 23, 1967, submitted a second proposal which expanded the terms of its original offer to include a basic minimum rental of 25% of the weekly gross receipts. Obviously it was intended that this additional rental provision would become executory only in the event the 90% of the gross revenues over house expenses would be less than 25% of the gross weekly receipts. Fox would not accept this proposal.
Being of the opinion that the picture would be an outstanding financial success and with the hope of inducing Fox to li *227 cense its exhibition at Lakeside rather than the Saenger Theatre in New Orleans, on July 20, 1967, Cobb communicated still another offer (a third offer) which increased the minimum guarantee from $65,000 to $75,000, and in all other respects reiterated the second offer. This proposal was approved by Fox and resulted in the execution of the contract dated July 20, 1967, which is the subject of this litigation.
The agreement provides, inter alia, as follows:
“$75,000 guarantee — to be paid in advance. TERMS: Exhibitor agrees to pay a rental fee equal to 90% of total gross receipts in excess of $3400.00 for each week, with a minimum of 25% of the gross receipts for such week. sfc sfc
“2. PAYMENT — * * * If Distributor so requests any guaranteed film rental will be paid before the print is shipped to Exhibitor. Otherwise film rental shall be paid weekly as earned with any balance becoming due and payable immediately following the termination of the exhibition of the picture hereunder.
* * * * * *
“6. CHANGES IN WRITING — This agreement is complete and all promises, representations, understandings, offers and agreements in reference thereto have been expressed herein. [N]o change or modification hereof shall be binding upon the Distributor unless in writing signed by an officer of or a person authorized by the Distributor.”
Though the contract required that the $75,000 guarantee be paid in advance, Lakeside only paid $37,500. No weekly rental payments were ever remitted.
Unfortunately the film was a serious disappointment at the box office and was a financial failure to both the distributor and the exhibitor.[1] Fox sued for the balance of $37,500 due under the guarantee specified in the contract. Appellant denied liability contending that under the custom and usage of the industry, in order to minimize its losses, Lakeside was entitled to a waiver of the guarantee of $75,000 and a modification of its rental obligations by either an “adjustment to scale or to contract.” [2] Appellant reconvened for the sum of $21,078, representing the difference between the deposit of $37,500 and $16,421.90, the net rental it maintains is due under the agreement “without regard to the minimum guarantee.” In a supplemental pleading, appellant sought a reformation of the contract averring mistake and fraud in its confection by the omission of any reference to adjustments, the contract thereby not reflecting the true intention of the contracting parties. Appellant provoked a trial of the matter by jury.
Though several defenses were asserted by appellant in its pleadings, apparently all were abandoned except the following two specifications of error urged on appeal:
I
Failure to find that the contract sued on was ambiguous and hence that resort must be had to the dealings of the parties to determine their true intent.
II
Failure to find that the picture was not of the quality expected by the parties and hence that the rental price should be adjusted as claimed by the defendant.
The first of the two issues raised by appellant is whether the contract was so am *228 biguous that we are obliged under LSA-C. C. arts. 1949 and 1963 to resort to equity, usage, custom and prior dealings between the parties to determine intent. The alleged ambiguity is that the contract contains “three mínimums”: the $75,000 guarantee; the rental of 90% of the weekly gross receipts after deducting operating expenses of $3,400; and a minimum of 25% of the gross receipts for each week.
Relying upon the jurisprudence expressed in the cases of Summerell v. Phillips [3] and Kemp v. Beasley,[4] the appellee submits that the issue of ambiguity was not raised in the trial court and therefore cannot be initiated on appeal. The record reflects that the trial judge charged the jury on the law concerning an ambiguous contract; therefore, we must assume this issue was indeed raised and was considered by the jury.
After reading the contract we find the language clear and understandable, particularly as it relates to appellant’s rental obligations. If not paid in advance, the $75,000 guarantee became due following the termination of the exhibition of the picture. The guarantee was owing even though the total weekly film rentals amounted to less than $75,000. The amount of the weekly film rental was based on 25% of the week’s gross receipts or 90% of those gross receipts in excess of $3,400, whichever was greater.
Not only are the rental provisions of the contract readily understandable, but Mr. Cobb in his second proposal to Fox, dated June 23, 1967, used the identical terms in his bid with the exception that the minimum guarantee was $65,000. Appellant cannot now be heard to complain that his own rental bid was indefinite, indeterminable and susceptible of more than one understanding.
There is no testimony by Mr. Cobb or any other witness that any specific provision of the contract is ambiguous, nor is there any documentar)' evidence tending to establish the uncertainty of intent. It is patent on the face of the instrument that Fox is guaranteed a minimum of $75,000 regardless of which of the weekly contract percentages is utilized. The contractual mínimums are not inconsistent with each other and these clauses must be interpreted so as to be given effect rather than rendered nugatory. LSA-C.C. art. 1951.
We therefore conclude that the record affirmatively establishes that no ambiguity exists in the provisions of this contract and therefore we must accord its terms the effect of law between the parties. (LSA-C.C. art. 1901). Under LSA-C.C. art. 1945, we are obliged to construe its legal effect according to the clear and explicit intention of the parties. Furthermore, LSA-C.C. art. 1963 prohibits resorting to equity, usage, custom, or prior dealings, to “enlarge or restrain that intent.”
The second issue raised by appellant is whether Lakeside is entitled to an adjustment of film rental for misrepresentation of the quality of the picture. The allegation of misrepresentation centers around two things: (1) “Doctor Dolittle” was not of road show quality, and (2) Fox made false representations that “Doctor Dolittle” would be a “blockbuster” box office success.
There was conflicting testimony on whether “Doctor Dolittle” was of road show quality. Mr. Cobb testified he thought it was a good movie, and in his letter of March 29, 1967, to the appellee he referred to the proposed exhibition as a “road show.” Additionally, one of Lakeside’s own witnesses who previewed the film prior to its release declared it was “a whale of a fine motion picture,” though he did not agree with some of the estimates of its projected gross revenue.
According to Fox’s representative, a road show is a big or quality picture with *229 a star cast, usually involving high production costs,[5] and is the subject of an intensive national publicity campaign to coincide with its release through selected theatres throughout the entire Country. It is for these reasons that the contracts for their exhibition are more rigid and exacting than are customarily used, and why the rental obligations therein will not admit of adjustment.
While the record confirms that Fox’s salesman stated to Mr. Cobb that “Doctor Dolittle” should be a “blockbuster,” this is merely an opinion statement on the film’s money making potential. Such an obvious speculative projection is not a misrepresentation of a material fact sufficient to constitute fraud within the contemplation of LSA-C.C. art. 1847.
One of appellee’s agents testified: “We can give him [Cobb] a guess and present it to him and tell him what the product is but we can’t tell a man how much he is going to get at the box office.” It is difficult to accept that Mr. Cobb, a man with 38 years’ experience in the movie industry who obviously is aware of the uncertainty of public reaction, would blindly enter, a contract based on the laudatory statements of a salesman.
Appellant’s contention that Fox materially misrepresented the quality of the pciture and therefore is entitled to an adjustment of the rental is not supported by a preponderance of evidence. On the contrary these issues of misrepresentation and the adjustment of rental consideration were submitted on interrogatories [6] to the jury, which found adversely to appellant. We also confirm that there is ample proof to substantiate the jury’s specific findings.
The jury’s verdict on the customs of the movie industry and defendant’s failure to prove misrepresentation are findings of fact which “may not be disturbed on appeal unless they are characterized by manifest error.” Scruggs v. McCraney, 234 So.2d 262 (La.App. 4th Cir. 1970); and Roussell v. Strug, 225 So.2d 34 (La.App. 4th Cir. 1969). We are of the opinion that there is an adequate evidentiary basis to sustain the jury’s findings of fact as reflected in their answers to the interrogatories submitted for their determination. Hence, we are convinced that no manifest error was committed.
For the foregoing reasons the judgment appealed from is affirmed with all costs to be borne by the defendant.
Affirmed.

. Lakeside exhibited the movie for 16 weeks during which period its total gross receipts amounted to $75,615.72.

. No useful purpose would be served by becoming involved in a detailed explanation of these types of technical adjustments, it being sufficient to state that they are recognized methods in the film industry to effect a reduction in the exhibitor’s financial obligations in order to mitigate the extent of loss.

. 258 La. 587, 247 So.2d 542 (1971).

. 188 So.2d 425 (La.App.3d Cir. 1966).

. Production costs for “Doctor Dolittle” were approximately $16,000,000.

. Interrogatories:
“1) Do you find that plaintiff made misrepresentations of material facts relating to a material cause or motive of the contract between plaintiff and defendant which resulted in defendant’s signing of the agreement?
% % % í¡{
“2) Do you find that a custom or useage existed in the movie industry which was a part of every agreement between a distributor and exhibitor and required adjustment of the original agreement where the film failed to perform to financial expectations ?
}[: * * * *
“3) Do you find that the original agreement between plaintiff and defendant was revised or reformed as a result of negotiations between Mr. Cobb and Mr. Dickstein or between Mr. Cobb and any other authorized representative which resulted in an adjustment of the consideration to be received by plaintiff for the Dr. Dolittle film?”