PETERS, Judge ad hoc.
Plaintiff, Thelma Epps, sued B. J. Buz-bee, d/b/a Heavy Haulers, and his insu-ror, National Fire and Marine Insurance Company, for damages for personal injuries and property damage sustained in a collision of her automobile and a truck owned by defendant Buzbee and being driven by David C. Tidrick, Buzbee’s employee. The case was tried by jury and judgment was rendered in favor of defendants, dismissing plaintiff’s suit. Plaintiff has appealed.
The accident occurred on Louisiana Highway 61 in the Parish of East Baton Rouge at approximately 4:00 P.M. on April 18, 1970. At the point of the collision, Highway 61 is a four-lane highway with two lanes of travel for north and southbound traffic. The two lanes of travel for both the north and southbound lanes are separated by broken white dividing lines and yellow lines act as dividing markers between the two directions of travel.
Plaintiff was traveling south toward Baton Rouge in the inside lane of travel. Tidrick testified he was operating defendant’s tractor-truck in the outside north lane of travel. One of the vehicles crossed over into the oncoming lane of traffic and the vehicles collided. Both drivers alleged the other was guilty of crossing over into his lane of travel. The jury was thus faced with deciding in which lane of traffic the accident occurred.
Plaintiff testified she was driving her 1970 Ford Maverick south on Highway 61 in the inside lane. She stated the first time she noticed the tractor-trailer was immediately before impact when the truck drove into her lane of travel. She testified the truck was approaching at an angle directly at her car. She stated that after the impact her car was thrown to the south and rear of the truck and came to rest near a telephone pole in the northbound lanes of travel.
Gloria McGee testified on behalf of the plaintiff. Mrs. McGee stated she was a pedestrian walking on the west side of Highway 61 in a southerly direction when she first noticed the truck proceeding in the inside north lane of traffic. She testified that a car traveling in front of the truck began to stop and the truck swerved across the yellow dividing lines in order to avoid a collision with the stopping vehicle and thereby drove into plaintiff’s lane of travel.
*545 Ernest Williams and Andrew London, both 16 year old high school students, testified they witnessed the accident together while walking on the sidewalk that parallels the east side of Highway 61. The Williams boy testified he first observed the truck as it was proceeding north in the outside lane of travel. He stated the truck attempted to avoid striking a black car that had stopped in the outside lane of travel and swerved across the north inside lane and then into plaintiff’s southbound lane, causing the collision.
Andrew London testified he first noticed the truck when it was traveling in the inside lane of travel and that the truck swerved into plaintiff’s lane in an attempt to avoid striking a black car that had stopped in front of the truck. Both boys testified the truck came to rest after impact in the outside lane of the northbound traffic. The London boy testified that he observed glass and debris located in the north inside lane. Mrs. McGee was unable to observe where the truck stopped after impact. These witnesses estimated the truck’s speed from 40 to 70 miles per hour.
David Tidrick maintained through his testimony that he was always driving in the outside northbound lane. He testified that shortly prior to the collision he stopped for a red light on Highway 61, then continued north in the outside lane and had just glanced down to shift gears on the truck when the collision occurred. He stated there were no cars in front of him at any time from the moment he left the stoplight to the point of impact. He estimated his speed to be no more than 30 miles per hour. He testified the truck he was driving was a heavy, 65 foot long tractor-trailer with a tandum tractor and a triple or three axle trailer.
State Trooper William Chandler arrived at the scene approximately five minutes after the accident. He testified the truck was parked on the northbound outside lane of travel. He observed glass and debris located in the inside northbound lane approximately two feet from the white dividing line separating the two northbound lanes. He testified the skid marks were directly behind the truck and were located in the outside northbound lanes.
Defendant Buzbee and one of his employees, George Ingles, arrived at the scene approximately fifteen minutes after the accident. Both testified that they observed debris lying in the northbound lane to the east of the yellow lines dividing the north and southbound lanes and observed skid marks behind the tractor-trailer in the outside northbound lane.
The accident occurred in front of a cleaning establishment in which Mary Cage was working. Mrs. Cage testified she was talking on the telephone to her husband and heard the impact. She immediately looked out the window of the cleaners and observed the tractor-truck stopping in the outside northbound lane. She testified that when the truck stopped, it was parallel to the east curb of Highway 61.
Dr. William H. Tonn was called as an expert witness for defendant. Dr. Tonn is a consulting engineer whose specialty is forensic engineering. Dr. Tonn testified he reviewed the scene of the accident and took measurements of the area. He stated he examined data purporting to show the skid marks left by the vehicles and other physical evidence found at the scene; testimony of some of the witnesses; as well as performing a physical examination of both vehicles. He testified the conclusions he reached as to his determination of how the accident occurred were based upon the application of his skills as a forensic engineer to all of the above described data.
It was Dr. Tonn’s opinion that the tractor-truck was traveling in the north outside lane of travel at the time of the impact. He felt the truck was proceeding in the 30 mile per hour range. He stated these conclusions were based on the facts given to him relating to the damages purportedly sustained by the truck, the skid marks left by the truck, the distance of the truck *546 from the debris, and the required time in which the truck stopped. He testified that, based upon the debris in the road and the points of impact on the vehicles, plaintiff was in the process of turning to the left at the time of the collision and that the collision occurred in the northbound lane.
Numerous photographs of the vehicles and of the scene were introduced into evidence. The evidence preponderates that the tractor-truck was struck to the rear of the left fender and in the area of the pipe support, located behind the left saddle tank and forward of the left rear tandum wheels of the tractor. There is also evidence of contact in the left front of the trailer. The front bumper of the truck was not damaged nor was a running light located at the front of the left front fender. This latter fact was particularly significant to Dr. Tonn. It was his opinion that if the tractor-truck had proceeded across the yellow dividing lines at the angle alleged by the plaintiff, impact would have occurred on the front bumper of the truck. It was also his opinion that if plaintiff had been struck head-on by the large tractor-truck the force of impact would have driven her small vehicle backward into the southbound lanes and she would not have stopped as she did to the south and east of the tractor-truck. The left fender of plaintiff’s Maverick was completely torn away as a result of the impact and the left door was torn off. The fender of her car was found under the trailer after the accident.
The trial judge properly charged the jury that if it found that plaintiff was on the wrong side of the road at the moment of impact, such a finding would render plaintiff contributorily negligent as a matter of law and, conversely, that if the jury found that the defendant was on the wrong side of the highway at the moment of impact, such finding would render defendant negligent as a matter of law.
By dismissing plaintiff’s suit, it is obvious the jury believed defendant’s version of the accident and chose not to accept the testimony of the witnesses offered by the plaintiff. ' The jury heard these witnesses and others testify and observed their demeanor on the stand. To discount any of the witnesses’ testimony was their prerogative. The law is clear that in the absence of manifest error on the part of the jury, the reviewing court is not free to1 substitute its judgment for that of the jury. Hooper v. Wilkinson, 252 So.2d 137 (La.App.3rd Cir. 1971). Reeder v. Allstate Insurance Company, 235 So.2d 111 (La.App. 4th Cir. 1970).
After a careful review of the evidence, we can find no manifest error herein. In our opinion there is sufficient, plausible evidence in the record to support the jury’s verdict. We therefore affirm the judgment of the district court at appellant’s cost.
Affirmed.