292 So.2d 901 (1974)
Mrs. Mae Cagnolatti FENGER et al.
v.
Bruce CAGNOLATTI.
No. 5609.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1974.
*902 James J. Grevemberg, New Orleans, for plaintiffs-appellants.
Charles S. Becnel, Vacherie, for defendant-appellee.
Before REDMANN, J., and HUFFT and WICKER, JJ., Pro Tem.
PRESTON H. HUFFT, Judge Pro Tem.
The four plaintiffs-appellants and the defendant-appellee are the children of the late Mr. and Mrs. William P. Cagnolatti, Jr. The plaintiffs brought this action for a partition of the real estate situated in St. James Parish, which had been acquired by their parents. The plaintiffs claimed to be the owners of an undivided 1/5 interest each with the remaining 1/5 interest in the name of the defendant. By an amended petition, the plaintiffs later sought to have their interest recognized in certain cash and homestead stock listed in their father's succession. The lower court recognized the defendant as the owner of an undivided six-tenth interest in the real property and the plaintiffs as the owners of an undivided one-tenth interest each. The lower court rejected all other demands of the plaintiffs and ordered a sale at public auction to affect a partition of the property. It is from this judgment that the plaintiffs appeal.
On February 4, 1967, the parties' father, William P. Cagnolatti, Jr., died intestate. At the time of his death, he and Mrs. Cagnolatti were living alone in their home in St. James Parish. Mrs. Cagnolatti was in ill health, as a result of a series of strokes suffered some years earlier. Because of their mother's health, the parties to this suit felt their mother should not live alone and she was placed with one of the plaintiffs, a daughter who lived in New Orleans. This daughter was compensated at the rate of $100.00 per week to care for the mother.
This arrangement was not to Mrs. Cagnolatti's likingshe wished to return to her own home in St. James Parish. After several weeks in New Orleans, she went to live with the defendant and his wife in Gonzales, La. This, too, was unsatisfactory. As one of the plaintiffs testified, their mother was old and she wanted to go home to live. In accordance with his mother's wishes, the defendant uprooted his familywife and seven childrenfrom Gonzales, moved into the family home in St. James Parish and cared for his mother until her death. Mrs. Cagnolatti lived some 80 weeks with the defendant and his family.
Just prior to returning to her home in St. James Parish, Mrs. Cagnolatti opened the succession of her late husband. By a judgment of possession, signed on May 31, 1967, she was recognized as the owner of an undivided ½ interest in the community and the five children were placed in possession of the remaining undivided ½ interest, subject to the usufruct of their mother. The entire community consisted of the family property in St. James Parish and $17,100 in cash and homestead savings. The children were not parties to the opening of the father's succession although the defendant knew his mother had opened the succession and had assisted her.
Shortly after returning to the family home in St. James Parish, Mrs. Cagnolatti on June 7, 1967 signed an act conveying her undivided ½ interest in the property in St. James Parish to the defendant. The act recites a cash consideration of $5,000.00 *903 but the defendant readily admitted on the stand that the $5,000.00 had not been paid. In addition, the defendant admitted that the act had not been signed before the notary and two witnesses but that, at his mother's request, he had taken the act to her to sign at home and had returned the signed document to the notary public. While living with the defendant, Mrs. Cagnolatti converted the homestead savings into cash and placed these funds, together with the cash listed in her husband's succession, under the control of the defendant to be spent on her behalf.
The defendant continued to care for his mother at the family home in St. James Parish until her death on November 29, 1968. On September 8, 1969, the four plaintiffs opened the succession of their mother. They listed as the only asset of the succession the mother's ½ interest in the property in St. James Parish, averred there were no debts of the succession and accepted the succession purely, simply and unconditionally. The plaintiffs, along with the defendant, were recognized as the sole heirs of their mother and placed in possession of an undivided 1/5 interest each of the mother's undivided ½ interest in the real property in St. James Parish. The defendant was not a party to these proceedings. Shortly after the judgment of possession was signed, the plaintiffs brought this action for partition against the defendant alleging to be the owners of four-fifths of the real property. Hence, the transfer by Mrs. Cagnolatti on June 7, 1967 of her interest in the real property to the defendant becomes the focal point of this litigation.
The following extract from the Reasons of Judgment assigned by the Trial Judge sets forth the lower court's findings in favor of the defendant:
"The defendant, Bruce Cagnolatti, then moved this wife and children from Gonzales to St. James to live with and care for his mother in the family home.
Shortly after this, Mrs. William Cagnolatti alienated all of her interest in the immovable property she and her husband had acquired in community. This alienation was in the form of an authentic act of sale to the defendant, Bruce Cagnolatti. At the trial, the defendant readily admitted that the stated consideration had not been paid and that the act was not in fact executed before the notary and witnesses. Mrs. Cagnolatti removed from various banks and homestead all of the cash and other movable assets and entrusted these funds to the defendant, who testified at the trial that he had used the money received for his mother's benefit, as she had directed that he do. He also testified that none of these funds remained, having all been expended for his mother's benefit. Mrs. Cagnolatti lived over eighty weeks with the defendant and his family before her death.
"The Court realizes that the judgment it has rendered leaves the plaintiffs with no inheritance from their mother, and an inheritance in only the real property left by their father. The defendant, on the other hand has acquired his mother's half interest in the immovable community property. This acquisition was not by inheritance, however, but by an inter vivos alienation. The Court finds that the "sale" to the defendant by his mother was really an onerous and remunerative donation, having been given for defendant's past act in uprooting his family and moving to his mother's home and his promise that he and his family would care for Mrs. Cagnolatti for the remainder of her life. The evidence reveals that this promise was fulfilled.
Mrs. William Cagnolatti's health continually deteriorated after her husband's death, and for many months she was a hopeless invalid. The defendant and his wife according to their testimony and that of Dr. Stephen Campbell, provided Mrs. Cagnolatti with constant and excellant *904 care during many difficult months. The defendant earned the land acquired from the parties' mother. The cash and other assets also appear to have been spent for Mrs. Cagnolatti's benefit. And even if they were not but were instead donated, the plaintiffs can no longer recover them, since the judgment of possession in their mother's succession has already been rendered (on the petition of plaintiffs, it should be noted) Kinney v. Kinney, 150 So.2d 671 ([La.App.] 3rd Cir. 1963)."
It is well established in our jurisprudence that the findings of fact of the trial court will not be disturbed in the absence of manifest error. Epps v. Buzbee, 271 So.2d 543 (La.App. 1st Cir., 1973); 20th Century-Fox Corp. v. Lakeside Theaters, Inc., 267 So.2d 225 (La.App. 4th Cir., 1972); Clark v. Sears, Roebuck & Co., 254 So.2d 62 (La.App. 3rd Cir., 1971); Hooper v. Wilkinson, 252 So.2d 137 (La.App. 3rd Cir., 1971). We find no manifest error in the judgment of the lower court.
There is evidence to support the finding that the transfer of the real property from Mrs. Cagnolatti to the defendant was really an onerous and remunerative donation having been given for defendant's past act in uprooting his family and moving to his mother's home and, additionally, his promisewhich was fulfilledthat he would care for his mother for the remainder of her life.
The rules peculiar to donations inter vivos do not apply to onerous and remunerative donations except when the value of the object given exceeds by one-half that of the charges or of the services (R. C.C. Art. 1526). The opponents attacking the validity of an onerous and remunerative donation have the burden of proving that the value of the property given exceeds by one-half that of the charges or of the services. Placid Oil Co. v. Frazier, 126 So.2d 800 (La.App., 2nd Cir., 1961). The plaintiffs have failed to carry this burden. The only evidence in the record as to the value of the services rendered is to the effect that one of the plaintiffs was compensated at the rate of $100.00 a week to care for the mother (which for the 80 weeks Mrs. Cagnolatti lived with the defendant would amount to $8,000.00) and the detailed explanation of the inconvenience the moving to St. James caused the defendant and the extended care and attention given Mrs. Cagnolatti during the 80 week period, which could easily be valued in excess of $8,000.00. The record discloses also that in their mother's succession proceedings, the plaintiffs valued their mother's undivided one-half interest in the real property at $5,000.00 and the only real estate expert to testify placed the value of Mrs. Cagnolatti's one-half interest at $3,250.00 as of the date of the trial and lower than that as of June 1967. Thus, it can be seen that the value of the property given did not exceed by one-half that of the charges or of the services rendered by the defendant. Accordingly, the transfer of the property is unaffected by the rules pertaining to donations inter vivos such as R.C.C. Articles 1493, 1497 and 1536 (which requires that a donation inter vivos of immovable property be passed before a notary public and two witnesses) Castleman v. Smith, 148 La. 233, 86 So. 778 (1920).
There is evidence also, to support the lower court's finding that the cash which was entrusted to the defendant had been expended for Mrs. Cagnolatti's benefit. Mrs. Cagnolatti had the right to expend her own funds on her behalf and no one can be heard to complain of this action.
With respect to the one-half interest in the cash, which was inherited by the five children in their father's succession subject to their mother's usufruct and which was expended by Mrs. Cagnolatti on her own behalf, we find the following from Mariana v. Eureka Homestead Soc., *905 181 La. 125, 158 So. 642 (1935) to be controlling:
"The usufruct of money is an imperfect or quasi usufruct, and transfers to the usufructuary the ownership. R.C.C. Art. 534, 535. At the termination of the usufruct, the things consumed must be accounted for. In the meantime, however, the mother of the minors had the right, as owner, to spend or dispose of the moneys subject to the usufruct at her pleasure. R.C.C. Art. 549; Tutorship of Minor Heirs of Jones, 41 La.Ann. 620, 6 So. 180, Succession of Blancand, 48 La. Ann. 578, 19 So. 683.
Therefore the plaintiffs must look to the succession of their mother for an accounting of their funds, which the mother expended on own behalf. An action will not lie against the defendant.
For the reasons assigned above, the judgment of the lower court is affirmed.