PONDER, Justice.
 

 The plaintiffs seek the cancellation of a certain mineral lease and a certain power of attorney from the records of Acadia parish.
 

 The pertinent facts in this case are, viz.: On September 21, 1924, Gotlieb Leckelt and his five children — Bertha Leckelt Dietz, Richard Leckelt, William Leckelt, Hilda Leckelt Whiddon, and Jack Leckelt —executed a mineral lease to Charles G. Hooks on the northeast quarter less about
 
 *975
 
 15 acres in the northeast corner thereof, formerly belonging to the Eunice-Crowley Oil Co., leaving about 144 acres in said quarter section, in section 42, T. 9. S., R. 2. W., containing 144 acres, more or less. This property was acquired, during the community of Gotlieb Leckelt and his deceased wife, Matilda Leckelt, who died on March 1, 1924. At the time the lease was executed Gotlieb Leckelt owned a one-half undivided interest in the property and each of the children owned an undivided one-tenth interest in the property. Gotlieb Leckelt died on June 21, 1925, leaving as his sole heirs the same five above-mentioned children. On April 27, 1926, after the death of Gotlieb Leckelt, one ■ of the children, Richard Leckelt, executed a mineral deed to William Campbell, the interpretation and legal effect of which are at issue in this case, purporting to convey an undivided one-half interest in all the minerals that Richard Leckelt owned in and under the property. On' May 18, 1926, Charles G. Hooks assigned the mineral lease to the Gulf Refining Company of Louisiana. On July 21, 1926, Richard Leckelt executed a mineral deed to P. S. Moore conveying an undivided one-half interest in all the minerals that he owned in and under the property. The sales, of the mineral interests by Richard Leckelt to William Campbell and P. S. Moore wer'e made subject to the lease. The Gulf Refining Company of Louisiana, assignee of the Hooks lease, went upon the property and drilled two wells. One of the wells did not produce. oil but the other well produced oil from December, 1927, to the latter part of 1929, at which time the Gulf Refining Company discontinued its operations and formally abandoned the lease. No royalties were paid to Richard Leckelt but royalties were paid to William Campbell and P. S. Moore in proportion to the mineral rights set out in their deeds. There was no objection to the payment of these royalties to William Campbell and P. S. Moore made by either Richard Leckelt or any of the other co-owners. During the year 1932 William Campbell obtained mineral lease contracts from all the co-owners and all those who held mineral interest in the property, except Richard Leckelt, which lease was assigned by William Campbell on October 6, 1932, to the Olympic Oil Company. The Olympic Oil Company went upon the land in November, 1932, began drilling operations, and drilled to a depth of about 2,000 feet. William Campbell was in charge of these operations, by the Olympic Oil Company. No oil was produced from these operations and the Olympic Oil Company released all its rights under the leases on July 1, 1936. During the year 1935 A. E. Borsum acquired mineral leases from all the co-owners, except Richard Leckelt, and from all the outstanding holders of mineral rights, which lease was assigned by A. E. Borsum to the Superior Oil Producing Company on June 6, 1936! On August 4, 1936, the Superior Oil Producing Company went upon the land and began drilling operations. One of the defendants, E. A. Carmouche, Jr., admitted writing a letter to the Superior Oil Producing Company on August 22, 1936, and that the following statement was contained therein, as will be shown by E. A. Car
 
 *977
 
 mouche, Jr.’s testimony on pages 33 and 34 of the original transcript of this case, viz.:
 

 "Item Number 1.
 

 “Mineral lease, dated September 21, 1924, to Charles G. Hooks from Gotlieb Leckelt, Bertha Dietz, Richard Leckelt, Hilda Whiddon, William Leckelt and Jack Leckelt.
 

 “Item Number 2.
 

 “Assignment, of the above lease, by Charles G. Hooks to Gulf Refining Company on the 18th day of May, 1926.
 

 “Item Number 3.
 

 “The sale of Richard Leckelt to William Campbell, on the 22nd day of April, 1926, of an undivided one-half interest, in and to all of the minerals owned by him in the Leckelt tract.
 

 “Item Number 4.
 

 “The sale by Richard Leckelt to P. S. Moore, on July 21, 1926, of the remaining undivided one-half interest in all of the minerals originally owned by him in the said Leckelt Tract.”
 

 On September 29, 1935, the well drilled by the Superior Oil Producing Company began' producing oil in paying quantities. On August 4, 1936, the date of the beginning of the operations by the Superior Oil Producing Company, Richard Leckelt executed a mineral lease to E. A. Carmouche, Jr., in which it was stated the consideration was for legal services rendered and to be rendered. On the same date Richard Leckelt executed a power of attorney to E. A. Carmouche, Jr., with full authorization to act and with full authorization to file all suits that might be deemed necessary for the recognition or recovery of any interest that Richard Leckelt might have in the property, including the mineral rights. It was stipulated in the power of attorney that in consideration of the legal services rendered and to be rendered Richard Leckelt transferred an undivided one-half of the oil and mineral rights that he may presently own or be entitled to in and under the property. The record also shows that William Leckelt sold an undivided one-half interest of his mineral rights to William Campbell on May 13, 1936. There were other transfers of mineral rights but it is unnecessary to recite them for the reason they are not pertinent to this decision.
 

 The plaintiffs in their petition ask for the recognition of their leasehold and mineral rights and for the cancellation from the records the lease from Richard Leckelt to E. A. Carmouche, Jr., and the power of attorney from Richard Leckelt to E. A. Carmouche, Jr., alleging that these instruments cast a cloud upon plaintiffs’ titles.
 

 Defendants filed answer denying that the mineral lease relied upon by the Superior Oil Producing Company was or is valid and binding in so far as concerns the one-fifth interest of Richard Leckelt in the mineral rights in, on, and under the Leckejt tract; denying that the other plaintiffs have any rights under the mineral deeds relied upon by them and praying for judgment rejecting plaintiffs’ demand and dismissing plaintiffs’ suit hence with costs and for further judgment recognizing
 
 *979
 
 Richard Leckelt’s interest in said lands to be free and clear of any and all claims of the plaintiffs; ordering the cancellation of the instruments on which plaintiffs rely, in so far as they purport to affect Richard Leckelt’s interest in the land; and, in the alternative, that in any event Richard Leckelt be decreed to be the owner and entitled to the full and undisturbed possession thereof of an undivided one-twentieth interest in the mineral rights, free and clear of any and all claims by plaintiffs and subject only to the provisions of the agreements between defendant Richard Leckelt and defendant Emile A. Carmouche, Jr., of which plaintiffs complain; further praying, in the alternative, that the instruments relied on by plaintiffs be decreed to be null and void in so far as they affect or purport to affect said one-twentieth interest of Richard Leckelt. Defendants further prayed that, after trial on the merits, the Superior Oil Producing Company be perpetually enjoined from trespassing upon the land involved and from drilling on and from producing and extracting from the land oil, gas, and other minerals and reserving defendants’ rights to a full accounting for all oil and other minerals that may have been, are being, and may be extracted from said land by the Superior Oil Producing Company.
 

 The Superior Oil Company intervened, claiming to have succeeded to whatever rights the Superior Oil Producing Company had, adopted all of the allegations of the original petition and prayed for the same relief. It was stipulated (T. 313) that the answers theretofore filed by defendants should stand as answer to the intervention of Superior Oil Company.
 

 The lower court rendered judgment in favor of the plaintiffs as prayed for and the defendants have appealed.
 

 The mineral deed from Richard Leckelt to William Campbell is as follows:
 

 “Mineral Deed from Richard Leckelt. to William Campbell (T. 16)
 

 “The State of Louisiana \
 

 “Parish of Acadia
 
 J
 

 “Know all men by these presents:
 

 “That Richard Leckelt and Agnes Leckelt, his wife, of said Parish and State, have this day granted, bargained, sold, conveyed, set over, assigned and delivered, and by these presents do hereby grant, bargain, sell, convey, set over, assign, and deliver unto William Campbell a full undivided one-half (%) interest owned by the grantors herein and to all the oil, gas and other minerals in and under, and that may be produced from the following described lands situated in Acadia Parish, Louisiana, to wit:
 

 “The North-east quarter (*4) less about fifteen acres in the North-east corner thereof belonging to the Eunice-Crowley Oil Company, leaving about 144 acres in said quarter section, being all the remainder of said quarter section No. 42, Township 9. Range 2 W. and containing (144) one hundred and forty-four acres, more or less; together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for
 
 *981
 
 •oil, gas and other minerals and removing the same therefrom.
 

 “The said above described lands are now under lease, dated September 21, 1924, to ■Charles G. Hooks, which lease is duly recorded in Acadia Parish, Louisiana, Records, Conveyance Book §-3, at page 336, to which reference is hereby made for more full and particular description of said lease.
 

 “It is agreed and understood that one-half of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease otherwise payable thereunder to grantors, is to be paid to said grantee; and in the event the said above described lease for any reason becomes cancelled or forfeited, then and in that event the lease interest and all future rentals on said land for oil, gas and mineral privileges shall be owned jointly by the parties hereto, to wit; one-half (%) of the original amount owned by the grantors as shown in said lease to be retained by grantors, and the other one-half (%) to be owned by the grantee herein. The intention being that the grantors herein convey to the grantee herein a full one-half interest in all said oil and mineral rights, including royalty rights and incidental privileges rents, etc. hereinbefore referred to Grantor to receive all rentals from the Charles G. Hooks lease.
 

 “This sale is made in consideration of the sum of Eight Hundred ‘$800.00’ Dollars Cash in hand paid, the receipt of which is hereby acknowledged.
 

 “To have and to hold the above described' property, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Richard Leckelt
 
 &
 
 Agnes Leckelt, his heirs and assigns forever. And we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said W. M. Campbell, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.
 

 “In testimony whereof we sign, this the 27 day of April A. D. 1926.
 

 “[Signed] Richard Leckelt (his * mark)
 

 “[Signed] Agnes Leckelt (her * mark)”
 

 The defendants claim that this mineral deed contains a resolutory condition, namely, the cancellation and forfeiture of the Hooks lease and that upon the occurrence of the resolutory event, the cancellation of the Hooks lease, that one-twentieth of the mineral rights reverted to Richard Leckelt. The defendants rely on the provision in the deed, viz.: “ * *
 
 *
 
 jn (-he event the said above described lease for any reason becomes can-celled or forfeited, then and in that event the lease interest and all future rentals on said land for oil, gas and mineral privileges shall be owned jointly by the parties hereto, towit: one-half (%) of the original amount owned by the grantors as shown in said lease to be retained by grantors, and the other one-half (%) to be owned by the grantee herein.” At the time the lease was executed to Charles G. Hooks, Richard Leckelt owned an undivided one-fifth of an undivided one-half interest in the property. But at the time Richard Leckelt executed the deed to William Campbell con
 
 *983
 
 veying the mineral interest, Richard Leckelt owned an undivided one-fifth interest in the property owing to the fact that his father, Gotlieb Leckelt, had previously, died. The defendants lay stress on the words used in this provision of the deed “original amount” and the word “said” and contend that they refer to the amount owned by Richard Leckelt at the time the mineral lease was executed to Charles G. Hooks. In other words, they contend that this provision means that when the Hooks lease was canceled that William Campbell was only entitled, to one-half of an undivided one-tenth interest in the minerals or one-half of the-amount owned by Richard Leckelt at the time the lease was executed to Hooks. A reading of all the provisions of the deed refutes the defendants’ contention. However, were there ambiguity in the deed it would be unnecessary for us to go into an analysis of the provisions of 'the deed in view of the facts since the defendants themselves have by their own acts construed the instrument.
 

 Article 1956 of the Revised Civil Code provides, “When the intent of the parties is doubtful, the construction put upon it, bj the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation.”
 

 One of the defendants, E. A. Carmouche, Jr., by his letter to the plaintiffs, above mentioned construed the deed to convey to William Campbell one-half of the .mineral interest owned by Richard Leckelt and that the deed of Richard Leckelt to P. S. Moore conveyed the other half of Richard Leckelt’s interest to P. S. Moore. Richard Leckelt,. the other defendant, permitted Campbell and Moore to collect the royalties to that extent from the Gulf Refining Company during the time of their production. Richard Leckelt made no objection to the leasing of this interest and the operations made by the Olympic Oil Company. Richard Leckelt raised no objection to the lease entered into by Campbell and Moore to A. E. Borsum, wherein they leased to the same extent, and it was only shortly before the filing of this suit that Richard Leckelt has interposed any objection. Under these facts it would show that Richard Leckelt interpreted the deed to convey as contended for by Campbell and Moore. Thus it will be seen that the parties themselves have placed a construction upon the deed.
 

 It is well established that a co-owner cannot place a burden on or use the common property without the consent of the co-owners. It is also well established that a servitude is indivisible.
 

 Articles 738, 739, 740, 741, and 743 of the Revised Civil Code provide:
 

 “738.
 
 Coowners.
 
 — The coproprietor of an undivided estate can not impose a servitude thereon, without the consent of his coproprietof.
 

 “The contract of servitude, however, is not null; its execution is suspended until the consent of the coproprietor is given.”
 

 “739.
 
 Co owner granting servitude estopped.
 
 — The coproprietor who has consented to the establishment of a servitude on proerty held in common, can not prevent the exercise of the servitude by objecting that
 
 *985
 
 the consent of his coproprietor has not been given.
 

 “If he becomes owner of the whole estate, he is bound to permit the exercise of the servitude to which he has before consented.”
 

 “740.
 
 Coowner establishing servitude on his part of estate.
 
 — If the coproprietor has established the servitude for his part of the estate only, the consent of the other owners is not necessary, but the exercise of the servitude must be suspended, until his part be ascertained by partition. In this case, he to whom the servitude has been granted, may compel the coproprietor from whom he received it, to sue for a partition, or may sue for it himself.”
 

 “741.
 
 Coowners
 
 — Partition
 
 of
 
 estate.— If in the suit for a partition it be determined that the estate be disposed of by licitation, and he who has granted the servitude becomes owner of the whole, the servitude then exists on the whole estate, as if he had always been the sole owner.
 

 “But if by the licitation the estate be adjudicated to any other of the coproprietors the servitude becomes extinct, and the person who granted it is bound to return the price he received for it.”
 

 “743.
 
 Methods of establishing.
 
 — Servitudes are established by all acts by which property can be transferred, and as they are not susceptible of real delivery, the use which the owner of the estate to whom the servitude is granted, makes of this right, supplies the place of delivery.”
 

 Under the provisions of these articles a co-owner could establish a servitude on the common property with the consent of the other co-owners. It cannot be disputed that a land owner can establish a servitude on- his property by either ceding a part of his mineral interest or by reservation of a phrt of his mineral interest. Clark v. Tensas Delta Land Co., 172 La. 913, 914, 136 So. 1; Myers v. Cooke, 175 La. 30, 142 So. 790. This doctrine was approved in Holladay v. Darby, 177 La. 297, 148 So. 55. The case of Holladay v. Darby, supra, with other cases, was cited with approval in the case of Gulf Refining Company of Louisiana v. Glassell et al., 186 La. 190, 171 So. 846. In the case of Gaines v. Crichton, 187 La. 345, 346, 174 So. 666, wherein a sale was made reserving half of the mineral interest this court held to the effect that it was the establishment of a servitude and that the servitude was prescribed by ten years, nonuse. Hence it is to be seen that the sale or reservation, of a part of the mineral interest by a landowner is the establishment of a servitude. The doctrine laid down in these cases is correct for the reason that while servitudes are indivisible yet the benefits and advantages resulting therefrom may be divided. There is no reason why co-owners of common property, when they consent, cannot establish a servitude by the sale of a fractional interest of the mineral rights in the common property. For the same reason the sale by a co-owner of his fractional interest or a part of his fractional interest in the mineral rights in the common property would establish a servitude provided the co-owners consented. There is nothing in the record
 
 *987
 
 to show that at the time the deed was executed by Richard Leckelt to William Campbell that the co-owners had consented to the establishment of the servitude. However, under the provisions of article 738 the contract of servitude would not be null but its execution would be suspended until the consent of the co-owners was given. An examination of the above-cited articles shows that they do not provide any particular form or manner by which the consent is given. We take it that the consent can be given by acquiescence on the part of the co-owners. The co-owners acquiesced in the payment of the royalties to William Campbell in the proportion called for in his deed during the production of oil by the Gulf Refining Company of Louisiana. Furthermore all the co-owners, with the exception of Richard Leckelt, entered into lease contracts with William Campbell, the one to whom the servitude in this case was given, authorizing him to go upon the land to explore for oil. These leases were transferred to the Olympic Oil Company. After this lease had expired the co-owners joined with William Compbell in leases to A. E. Borsum. This lease was transferred by assignment to one of the plaintiffs herein. There is nothing in this record to show that there was any objection on the part of any of the co-owners to the exercise- of the servitude until shortly before this suit was filed and then the only ones who objected at this time were Richard Leckelt and, William Leckelt. We have already determined that William Leckelt and the other co-owners consented to the establishment of the servitude by asquiescing in the payment of the royalties to William Campbell in the proportion called for in his deed. Furthermore, William Leckelt is-not a party to the present suit. Richard Leckelt consented to the establishment of the servitude and he would be estopped from preventing William Campbell from, exercising the servitude under the provisions of article 739 and cannot prevent the exercise of the servitude by objecting on the ground that the consent of the other coproprietors has not been given. Furthermore he would be estopped from preventing William Campbell from exercising the servitude by derogating from or destroying his own grant. Gaines v. Crichton, supra. We take it that article 740 merely provides that it is not necessary to have the consent of the co-owners to validate the contract of servitude as between the grantor and the one to whom the servitude is granted. This article-recognizes the binding effect of the contract as between the parties. Under the provisions of the above-quoted articles of the Civil Code if the coproprietors consent the servitude becomes established. If the consent of the coproprietors is not given the servitude is suspended until the consent of the coproprietors is given. If the consent of the coproprietors is not obtained it is not necessary to the validity of the contract as to the parties to the contract and the one to whom the servitude is given has the right to compel the coproprietor from whom he received it to sue for a. partition. Article 740 of the Revised Civil Code ^is for the benefit of him to whom the servitude has been granted and can
 
 *989
 
 not be taken advantage of by the grantor to defeat his grant.
 

 For the reasons assigned the judgment is affirmed at appellant’s cost.
 

 All the co-owners joined in the lease to the Gulf Refining Company of Louisiana, authorizing the opérations and production on the common property. We have already determined that the acquiescence of the co-owners in the payment of the royalties to William Campbell in the proportion called for in his deed was in effect the giving of consent by the co-owners. They acquiesced in and consented to William Campbell receiving the benefits and fruits of the servitude, thereby consenting to the use of the servitude. Article 793 of the Revised Civil Code provides, “To preserve the right of servitude and prevent prescription from running against it, it is not necessary that it should be exercised exclusively by the owner to whom it is due, or by those who use his rights, or who represent him directly, as the usufructuary, the lessee or tenant, the attorney in fact or agent. It suffices if the servitude has been exercised by workmen employed by the owner, or by his friends, or those who come to see him.” Under the provisions of this article the use of the servitude by the Gulf Refining Company of Louisiana having inured to the benefit of William Campbell the then running of prescription was interrupted until the latter part of the year 1929 when production ceased and the Gulf Refining Company of Louisiana abandoned operations. Prescription would begin to run from that day. There is no necessity for us to determine whether or not the operation of the Olympic Oil Company interrupted the then running prescription since one of the plaintiffs, under a lease, is now producing oil on the land and royalties are being paid to William Campbell from such production in proportion to the amount called for in his deed. The use of the servitude therefore interrupts the then running prescription.