## SHORELINE OIL CORPORATION v. GUY et al.

### No. 5756.

Court of Appeal of Louisiana. Second Circuit.

March 31, 1939.

Rehearing Denied April 28, 1939.

Jack & Jack, of Shreveport, for appellant, Mrs. Sallie Wakeman Guy.

Herold, Cousin & Herold, of Shreveport, for appellees Mrs. Thigpen and Mr. Herold.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee-plaintiff.

## TALIAFERRO, Judge.

This is a concursus proceeding wherein the Shoreline Oil Corporation, lessee, availing itself of the provisions of Act No. 123 of 1922, deposited in the registry of the Court royalties produced under leases to it covering the East Half of Southwest Quarter (E½ of SW¼) and Northwest Quarter of Southeast Quarter (NW¼ of SE¼), Section 2, Township 21 North, Range 16 West, Caddo Parish, Louisiana; and cited all claimants to assert their respective right in and to the fund, which has been substantially augmented by subsequent monthly deposits.

The claimants cited and the interest alleged to be claimed by them, respectively, follow:

| | |
|---|---|
| Mrs. Mary G. Thigpen and S. L. Herold | Entire |
| S. A. Guy | ½ |
| The Texas Company | ¼ |
| Mrs. Lucille Kerley Lee | 1⁄16 |
| Geo. W. and Elizabeth Anne Robinson | 1⁄32 |
| Estate of J. M. Robinson | ⅛ |

All these claimants have executed mineral leases to the Shoreline Oil Corporation.

S. A. Guy died after filing answer and his surviving widow, Mrs. Sallie Wakeman Guy, his sole heir, was substituted as party defendant.

George W. Robinson also died after filing answer. His mother, Mrs. Lucille Kerley Lee, and his sister, Mrs. Elizabeth Anne Robinson Fry, are his sole heirs. They were recognized as such by the District Court of Caddo Parish and sent into possession of his succession property in the proportion of three-fourths to the sister and one-fourth to the mother. They were substituted parties defendant.

The other defendants answered. All defendants asserted claim to an interest in the fund, in the proportions above stated, and deraigned title upon which the same, respectively, was based.

At the inception of the trial a stipulation was entered fixing the interest of the following named defendants, claimants, in and to said fund and in that to accrue, as follows:

| | |
|---|---|
| The Texas Company | ¼ |
| Mrs. Lucille Kerley Lee | 9⁄128 |
| Elizabeth Anne Robinson Fry | 7⁄128 |
| Estate of John M. Robinson | ⅛ |

and judgment was immediately rendered and signed in keeping with the terms of the stipulation. These persons, owners of one-half interest in the fund, passed from the case. There remained as contenders, Mrs. Thigpen and S. L. Herold, on the one hand, and Mrs. Guy on the other. The issue between them is the sole question left for decision.

The lower court resolved the issue in favor of Mrs. Thigpen and Herold and rejected Mrs. Guy's asserted claim in its entirety. She prosecutes this appeal.

The lands involved herein, on and prior to May 19, 1906, together with several hundred more acres, some adjacent and some not, were owned by S. P. Harrell. On that date he executed a mineral lease in favor of G. W. Hardy to the entire acreage, containing various and sundry stipulations, including the usual royalty reservation of one-eighth of all oil produced and saved. This act was recorded May 21, 1906, in Conveyance Book No. 41, folio 134 of the records of Caddo Parish.

On December 10, 1906, Harrell executed to S. A. Guy a cash deed conveying property therein described as follows:

"An undivided one-half (½) interest in and to all royalties, agreements and contracts as fully shown by contract between S. P. Harrell and G. W. Hardy recorded in Conveyance Book 41 page 134–135, Records of Caddo Parish, La. of date May 19th, 1906.

"It being the intention to transfer herein an undivided one-half interest in and to all oil, gas and minerals in or under all lands described in said Conveyance Book 41 pg. 134–135 subject only to the agreements and stipulations made therein by this vendor with said G. W. Hardy."

This instrument expresses a price of $1000. It was recorded December 10, 1906, in Conveyance Book No. 42, folio 667 of the Records of Caddo Parish.

On October 31, 1908, Harrell executed what on its face purports to be a cash sale, for the stated price of $2000, from which we quote, " * * * unto S. A. Guy of same residence (the vendor herein retaining all surface rights therein) (in addition to the sale of oil, gas and other minerals already made as per Conveyance Book #42, page 667, records of Caddo Parish, La.) * * * an undivided one-half interest in and to the following described property, to-wit: * * * ."

There follows an exact description of the various tracts described in the mineral lease from Harrell to Hardy, supra, which is followed by this qualifying sentence, viz.; "This sale being made of the subsoils and their contents."

This instrument will hereinafter be referred to as "Guy No. 3", as is done in briefs.

It is conceded here, as was done below, that if this second conveyance by Harrell to Guy is in reality what on its face it purports to be, viz., a cash sale of one-half interest in the minerals in and to the lands therein described, Mrs. Thigpen and Herold are without interest in the embattled fund. On the other hand, if, as was held by the lower court, said instrument is and was intended to be simply a correcting deed, designed to amplify and supplement the former sale between the parties, Mrs. Guy can take nothing by this suit. In his answer, Guy asserts that by and through said two instruments he acquired the entirety of Harrell's one-eighth royalty stipulated in the lease from him to G. W. Hardy. Herold and Mrs. Thigpen deny this and allege that Guy long ago divested himself of all interest he ever owned in the minerals.

On March 3, 1908, S. A. Guy conveyed to W. B. Sharp an undivided one-half interest in the minerals he acquired from Harrell. This interest was ultimately acquired by the Texas Company. It in realty conveyed a one-fourth of the royalty.

On September 30, 1911, S. A. Guy conveyed to the S. A. Guy Oil Co. an undivided one-fourth interest in the same royalty. This interest was acquired by J. M. and G. W. Robinson on January 12, 1917, which their heirs own at the present time.

On the 19th of April, 1913, S. P. Harrell sold and conveyed to the Natalie Oil Company one-half interest in the royalty reservation made by him in the lease to Hardy. This instrument was recorded on the 21st day of April, 1913, in Conveyance Record Book No. 83, folio 461, Caddo Parish. The mineral rights described in this transfer by mesne conveyances were finally vested in S. L. Herold and J. A. Thigpen. Thigpen died several years ago. His widow, Mrs. Mary C. Thigpen, is his sole heir. In her own right, she acquired the fee to the 120 acres involved herein.

If Guy's contention is correct, Harrell made three separate sales of one-half interest each in the royalty in question. The record clearly negatives that he thought he had done so. Guy made no pretense of ownership to more than one-half interest in the royalty until the year 1934, long after he had disposed of one-half interest therein, at which time he executed the lease to the Shoreline Oil Company.

The instrument designated as "Guy No. 3" on its face contains no declaration or statement suggestive of it being a correcting, supplementary or amplifying deed. Evidently it was not drawn by a lawyer or other person skilled in the confection of such documents. The notary public before whom it was passed had no part in its drafting. If appraised from its eight corners alone, there could be no escape from the conclusion that it evidences a sale of one-half interest in the minerals beneath the surface of the lands therein described. The consideration expressed is twice as much as appears in the first deed between the parties. The first deed, however, did not describe a single tract of land, and it was probably due mainly to this omission that the second one was executed.

As early as January, 1910, the registry of "Guy No. 3", unexplained, caused those in interest some concern and steps were taken to procure a construction of it from Hardy and also Guy. A representative of the Texas Company of Houston, Texas, wrote

Hardy for an interpretation of the instrument. He immediately got in touch with Guy, then living in Shreveport, Louisiana. Guy promptly came to Hardy's office and after full discussion of the matter, Guy dictated and signed the following letter to Hardy, to-wit:

"Dear Colonel: Replying to your inquiry over the 'phone this morning I beg to state that the royalty in the Harrell lease should be as follows:

"One-sixteenth ($\frac{1}{16}$) to S. P. Harrell. One-thirty-second ($\frac{1}{32}$) to W. B. Sharp. One-thirty-second ($\frac{1}{32}$) to S. A. Guy.

"This is correct and the intention of all matters of record in the Clerk's Office of Caddo Parish, La."

This letter also discloses Colonel Hardy's own understanding of the intention of "Guy No. 3".

In keeping with the commitment reflected from this letter, on January 26, 1910, a division order was signed by the Producers Oil Company, assignee of Colonel Hardy, S. P. Harrell, S. A. Guy and W. B. Sharp, directed to the Louisiana Company, wherein the signatories certified and guaranteed their respective interest in the minerals in and under the Northeast Quarter (NE¼) of the Southwest Quarter (SW¼) of Section 2, Township 21 North, Range 16 West, to be in the following proportions:

| | |
|---|---|
| Producers Oil Co. | 7/8 |
| S. P. Harrell | 1/16 |
| W. B. Sharp | 1/32 |
| S. A. Guy | 1/32 |

And on July 1, 1915, a like division order, directed to the Texas Company, was signed by Harrell, the Natalie Oil Company, the S. A. Guy Oil Company, through S. A. Guy, president, and the Producers Oil Company, covering the 120 acres involved, in which the royalty interest of the S. A. Guy Oil Company was stated to be one-thirty-second ($\frac{1}{32}$).

During the year 1908, Guy wrote three letters to W. D. Bates, representative of the Texas Company in Houston, Texas, the first one being dated May 28th, wherein reference is made to efforts on his part to procure from Harrell a correcting deed of some character, and the difficulties he was encountering in the effort. These letters, while not entirely conclusive thereof, evidently referred to "Guy No. 3". In the letter of May 28, it is said: "I have gotten Mr. Howard (Harrell) to agree to this correction, and have all the deeds made out, and if nothing happens to prevent will go to Oil City and get them signed tomorrow and return same to you. This is a matter that had to be carefully handled, * * *."

It will be noted that "Guy No. 3" was executed on October 31st. In the letter of November 14th, he says: "I have at last gotten a deed from Mr. Harold (Harrell), but cannot have it recorded until Mr. Harold's taxes have been paid."

The division orders, signed by Guy and Harrell, ignore entirely "Guy No. 3" as an instrument of conveyance. The orders definitely follow the public records without reference to "Guy No. 3". The status of the mineral ownership as thus fixed formed the basis of that ownership to 1934, when Guy first disclosed a purpose to advance the claim asserted by him and his widow herein.

The instrument, "Guy No. 3", on its face is obviously ambiguous. The language following the grantee's name and residence is susceptible of two distinct interpretations, neither of which is in keeping with the construction the parties themselves placed thereon, to-wit: (1) that the vendor not only retained the surface rights to the lands described but, in addition, the interest in the oil, gas and other minerals he had previously conveyed to Guy. Of course such a construction would be absurd. And (2) that in addition to what was sold previously by Harrell to Guy, the parties by this instrument, sold and acquired, respectively, another half-interest in the "sub-soils and their contents", which means minerals, of the lands therein described.

The interpretation of the ambiguous features of the instrument by the parties thereto immediately after its execution, at a time non-suspicious, when the facts were fresh, is the safest index to the instrument's true meaning. Guy's silence for over a quarter of a century strongly serves to confirm the correctness of his original understanding of the instrument's true purpose.

It is urged by appellant that as the pleadings do not allege error of any sort in "Guy No. 3", and since there is no specific demand (in the pleadings) for a reformation of that instrument, evidence admitted below to clarify the ambiguities therein and to establish the construction placed thereon by the parties themselves

should have been excluded. We do not think this position well founded. No authority to support it has been cited.

Article 1956 of the Revised Civil Code, appearing under the title, "Of The Interpretation Of Agreements", reads: "When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."

This article has been cited and relied on by the courts in numerous cases involving written contracts, and has served the purpose for which it was intended. It surely furnishes a safe rule of interpretation of inartfully drawn agreements, because the parties themselves, better than others, as a rule, know the objective the written act is designed to accomplish and the reasons prompting them to try to reduce their intentions to writing. When the true intent of the parties has been ascertained from their own actions, express or implied, oral or written, or by judicial interpretation, nothing remains to be done save enforce them as found. When thus ascertained, the intentions become an integral part of the contract to the same extent as though they had been originally expressed therein in unequivocal or unambiguous words. Liverman et al. v. Hungerbeeler, 156 La. 279, 100 So. 425; Superior Oil Producing Co. v. Leckelt et al., 189 La. 972, 181 So. 462; United Gas Public Service Co. v. Roy, La.App., 147 So. 705.

For the reasons herein assigned, the judgment appealed from is affirmed..