THOMAS J. KLIEBERT, Judge Pro Tern.
Northcott Exploration Company instituted a concursus proceeding to determine the ownership of a 1/256 royalty interest in production from a producing unit well. The two groups competing for the owner *472 ship of the royalty interest were: (1) Ronald, Daniel, James and Yerdice Delcambre (hereinafter Delcambre group), appellants, and the surviving spouse and children of Howard Delcambre, and (2) W.W. Rucks, III, the Succession of Bryant A. Fehlman, Millie Loggins Fehlman, Richard A. Campbell, Robert A. Mosbacher, individually and in his capacity as trustee for each of the Diane, Robert, Kathryn and Lisa Mosbacher Louisiana Trusts, Emile Mosbacher, Jr., and Patricia Mosbacher (hereinafter Billings group), appellees. At the time the concursus proceeding was instituted the members of the Delcambre group were owners of an undivided mineral and surface interest in a 160 acre tract contributing mineral acreage to the producing unit well. The members of the Billings group were the assignees of L. Charles Billings of a 1/256 royalty interest in a tract of land which included the 160 acre tract. Billings had obtained the royalty interest on January 24, 1964 by a royalty deed executed by Howard Delcambre, the predecessor in title of both claimants. The Billings group filed a third party petition calling L. Charles Billings in warranty because the assignment to them was by warranty deed.
After the case was submitted on the pleadings and stipulations of the parties, the trial judge, on April 12, 1984, rendered judgment decreeing the Billings group to be the owners of the disputed royalty interest. The Delcambre group brought this devolutive appeal. The Billings group neither appealed nor answered the appeal. For the reasons stated, we affirm.
There is no dispute as to facts. All litigants agree the ownership of the royalty interest turns on the validity of the royalty deed by Howard Delcambre to L. Charles Billings.
The Delcambre group contends Howard Delcambre had no interest in the tract when he executed the royalty deed to Billings, hence, the execution of the deed conveyed nothing. On the other hand, the Billings group contends Howard Delcambre had a 1/32 mineral interest in the tract when the royalty deed was executed. Hence, a determination of Howard Delcam-bre’s interest in the tract as of January 24, 1964, the date on which the royalty deed was executed, is dispositive of the question of ownership of the 1/256 royalty interest.
As a result of an exchange and donation (with a subsequent act of correction) executed and filed of record in 1957, Howard Delcambre acquired from his parents an undivided 1/16 mineral interest in certain lands which included the 160 acre tract involved here. Subsequently, in 1958, he acquired by inheritance and was placed into possession by judgment rendered in the succession of his father, a 1/16 interest in the surface and a 1/32 interest in the minerals in several tracts of land which included the 160 acre tract.
On March 5, 1963, Howard Delcambre conveyed to his brothers and sisters an interest in six tracts of land, amongst which was included the 160 acre tract. The Delcambre group contends the deed conveyed all of Howard Delcambre’s interest, i.e., that acquired by the act of donation and exchange as well as that acquired by inheritance from his father. Since Howard Delcambre had disposed of all of his interest prior to executing the royalty deed to Billings, the Delcambre group argues that the royalty deed conveyed nothing because Howard Delcambre had nothing to convey.[1] *473 On the other hand the Billings group contends the transfer was limited to a 1/16 interest in the surface and minerals, therefore, Howard Delcambre was the owner of the 1/32 mineral interest acquired by inheritance from his father at the time the royalty deed was executed.
The deed from Howard Delcambre to his brothers and sisters described the property transferred as:
“An undivided 1/16 interest in and to those certain marshlands lying and being situated in the Parish of Vermilion, Louisiana, known and designated as:” [then follows the legal description of several tracts of land amongst which is included the 160 acre tract in question here. No exception or reservation as to mineral is made].
Notwithstanding the specific conveyance of an undivided 1/16 interest in the tracts of land described, the Delcambre group contends the deed also transferred to his brothers and sisters the interest acquired by Howard Delcambre by inheritance from his father by the following language contained as the seventh item in the itemized properties conveyed:
“7. All of Vendor’s right, title and interest of whatever nature and kind, including mineral, and/or royalty rights to which he may have been entitled by virtue of Vendor’s ownership of the property described in Items 1 through 6 above.”
Counsel for the Delcambre group argues that at the time the transfer was made the creditors of Howard Delcambre were threatening to seize all of his property, therefore, it was Howard Delcambre’s intent to transfer all of his interest in the properties owned by him at the time in order to put all of it out of reach of his creditors.
On the other hand, counsel for the Billings group argues that the deed to his brothers and sisters transferred only a 1/16 interest in the 160 acre tract, therefore, Billings and his assignees are entitled to rely on the public records which showed Howard Delcambre to be the owner of a 1/32 mineral interest in the 160 acre tract at the time the royalty interest was conveyed by Howard Delcambre to L. Charles Billings.
In his reasons for judgment the trial judge said:
“The Court, in considering the rule of interpretation of instruments in the case of Sabatier v. Bowie Lumber Company, 56 So.2d (sic) 628, Snelling v. Adain [196 La. 624] 199 So. 782, and Shoreline Oil Corporation v. Guy, 189 So.2d 348 (sic), and also the right of parties to rely on the public record, C.C. Article 2239 and R.S. 9:2721, finds that the interest in question belongs to the assignees of L.C. Billings.”
The facts in Sabatier v. Bowie Lumber Company, 129 La. 658, 56 So. 628 (1911) are similar but not exactly the same as the facts in the case at bar. There the property conveyed was described as: “The undivided one-sixth of a certain tract of land ...” and concluded with the verbage “The present vendor sells all of his rights, title and interest in the same, being the undivided one-sixth of said property.” In concluding the interest conveyed was only an undivided one-sixth interest the Supreme Court said:
“The argument of counsel for defendant that the whole tract was conveyed is based entirely on the paragraph above quoted. If that was all the description of the interest conveyed, the authorities cited in behalf of the defendant would be applicable. But, taking the description as a whole, we find that the vendor conveyed specifically the ‘one undivided one-sixth of the tract’ ...” [Emphasis supplied in part]
Although the court concluded from information outside of the conveyance records that Sabatier in fact owned more than an undivided one-sixth interest, the court said:
“But without considering these outside facts, the recitals of the deed suffice to show Dr. Sabatier was under the impression that he owned only one undivided sixth of the property. We agree with the *474 judge below that the whole property was not conveyed, nor intended to be conveyed.”
In Snelling v. Adair, 196 La. 624, 199 So. 782, the Supreme Court at page 785 said:
“It is the general rule that: ‘Where a particular and a general description in a deed conflict, and are repugnant to each other, the particular will prevail unless the intent of the parties is otherwise manifested on the face of the instrument.’ ” (Citations Omitted)
In Shoreline Oil Corporation v. Guy, 189 So. 348 (2nd Cir.1939), the court at page 357 said:
“The interpretation of the ambiguous features of the instrument by the parties thereto immediately after its execution, at a time not suspicious, when the facts were fresh, is the safest index to the instrument’s true meaning ...”
After a careful review of the record and in particular the particular instruments involved we cannot say the trial judge erred. When the total description in the March 5, 1963 deed is considered along with the interpretative rules set out above, the deed must be construed as a conveyance of the stated specific interest of “1/16” rather than of his whole interest. Further, although it may have been Delcambre’s intention to place all of his property out of reach of his creditors, that intention is not reflected by the record. Thus Billings and his assignees, under the provisions of Civil Code Article 2239[2] and LSA-R.S. 9:2721, were entitled to rely on the records which at the time of the conveyance of the royalty interest showed Howard Delcambre was the owner of at least a 1/32 mineral interest in the 160 acre tract.
Accordingly, we affirm the judgment of the trial court. All costs of the appeal are to be borne by the appellants.
AFFIRMED.

. Simultaneously with the conveyance to his brothers and sisters, a counter letter was executed under which Delcambre had a right to repurchase the interest conveyed. In subsequent litigation the Third Circuit concluded the counter letter was valid. See Delcambre v. Dubois, et al, 236 So.2d 249 (3rd Cir.1970) and 263 So.2d 96 (3rd Cir.1972), thus granting to Howard Delcambre the right to reacquire the interest transferred. As a result, the interest conveyed by this deed was retransferred to Howard Delcambre by District Court judgment in May 1971. Notwithstanding the retransfer, the doctrine of after acquired title is not at issue here because the royalty deed contained the following provision: "This sale is made with no warranty as to title and no recourse whatsoever. The parties to this act hereby declare that this sale covers only and exclusively that interest presently owned, if any, by Howard Delcambre, and shall no way affect or bear upon any real property or minerals acquired by Howard Del-cambre after January 24th, 1964."

. This article number was vacated by the amendment and reenactment of Titles III and IV of Book III of the Civil Code of 1870, which formerly contained C.C. arts. 1756 to 2291, by Act 1984, No. 331 to contain C.C. arts. 1756 to 2057, effective January 1, 1985.
For the subject matter of former C.C. art. 2239, see, now, C.C. arts. 2021 and 2035.