STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2022 CA 1011

POULE D'EAU PROPERTIES, L.L.C.

VERSUS

TLC PROPERTIES, INC. AND THE LAMAR COMPANY, L.L.C.

**Judgment Rendered:    FEB 2 4 2023**

\* \* \* \* \* \*

Appealed from the
Thirty-Second Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Suit Number 179945

Honorable Randall L. Bethancourt, Presiding

\* \* \* \* \* \*

Mark A. Hill                          Counsel for Plaintiff/Appellee
Randolph J. Waits                     Poule D'Eau Properties, L.L.C.
Matthew F. Popp
New Orleans, LA

Rose M. Lebreton                      Counsel for Defendants/Appellants
Tyler J. Arbour                       Lamar Advertising of Louisiana, LLC
Ryan M. Tucker                        and TLC Properties, Inc.
New Orleans, LA

\* \* \* \* \* \*

BEFORE: GUIDRY, C.J., WOLFE, AND MILLER, JJ.

**GUIDRY, C.J.,**

Defendants/appellants, Lamar Advertising of Louisiana, L.L.C. and TLC Properties, Inc.[1] (collectively Lamar), appeal from a trial court judgment granting summary judgment in favor of plaintiff/appellee, Poule D'Eau Properties, L.L.C. (Poule D'Eau), denying Lamar's cross motion for summary judgment, declaring Poule D'Eau to be the sole owner of the tract of land at issue, and evicting Lamar from the property. For the reasons that follow, we affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Joseph Duplantis, Jr. and Rosemary Whipple Duplantis owned an approximately 72-acre tract of land along Highway 182 between Lake Houmas Motel and Coteau Road in Terrebonne Parish, Louisiana. On December 31, 2003, Rosemary died intestate. Thereafter, in a judgment of possession dated September 15, 2005, Joseph was recognized as the owner of an undivided one-half interest in the property. Joseph was also recognized as having a life-time spousal usufruct over Rosemary's undivided one-half interest in the property. The judgment of possession further recognized Joseph and Rosemary's six children (Duplantis heirs) as Rosemary's sole surviving heirs, recognized them as the owners, and placed them in possession of Rosemary's undivided one-half interest in the property.

Thereafter, on September 4, 2007, Joseph executed a "Grant of Easement" in favor of Lamar whereby Joseph, representing that he was the sole owner of the property, granted a perpetual servitude[2] to Lamar for the location, construction, and maintenance of billboards on the property. Joseph subsequently died on May 31,

---

[1] The defendants were incorrectly named in Poule D'Eau's petition as "The Lamar Company, L.L.C." and "TLC Properties, L.L.C.," respectively.

[2] Under Louisiana jurisprudence, the common law word "easement" is the same as the Louisiana "servitude." See Poule D'Eau Properties, L.L.C. v. TLC Properties, Inc., 18-1400, p. 2 n.2 (La. App. 1st Cir. 6/16/20) 2020WL3249294 *1 (unpublished opinion).

2009. Thereafter, in August 2010, the Duplantis heirs, through their attorney, contacted Lamar and asserted that the servitude granted by Joseph was invalid. In July 2011, the Duplantis heirs again reached out to Lamar through their attorney, asserting the invalidity of the servitude granted by Joseph to Lamar and offering, unsuccessfully, to enter into a lease agreement with Lamar.

By judgment of possession dated June 6, 2012, the Duplantis heirs were recognized as the legatees of Joseph under his notarial last will and testament and as such, were recognized as owners and were placed in possession of Joseph's undivided one-half interest in the property. The Duplantis heirs subsequently sold the property to Poule D'Eau on September 8, 2016.[3]

Thereafter, Poule D'Eau filed a Petition for Petitory Action Seeking Declaratory Judgment and Eviction of Defendants on May 16, 2017. Poule D'Eau asserted that Lamar had erected three advertising signs on the property and despite amicable demand, has refused to vacate the property. Poule D'Eau also alleged that none of the Duplantis heirs consented to the servitude granted by Joseph in favor of Lamar and as such, the servitude was null and void. Poule D'Eau sought a judgment declaring it to be the sole owner of all rights over the property and evicting Lamar from the property.

Lamar responded by filing an Answer, Affirmative Defenses, and Exceptions, including the peremptory exception raising the objections of no right of action and prescription. Poule D'Eau subsequently filed a motion for summary judgment, asserting that Joseph, as a usufructuary, was not permitted under Louisiana law to encumber, alienate, or otherwise dispossess the Duplantis heirs, who are the naked owners, of any portion of the property. As such, Poule D'Eau asserted that the

---

[3] On April 7, 2015, Patrick Duplantis, one of the Duplantis heirs, sold his undivided interest in the property to Poule D'Eau. Thereafter, Poule D'Eau acquired the remaining interest in the property from the remaining Duplantis heirs by an Act of Exchange dated September 8, 2016.

servitude is null and void and it should be granted summary judgment declaring the servitude null and void and evicting Lamar from the property.

Following a hearing on Lamar's exceptions and Poule D'Eau's motion for summary judgment, the trial court signed a judgment on April 13, 2018, maintaining Lamar's exception raising the objection of no right of action and dismissing all of Poule D'Eau's claims against Lamar with prejudice. Poule D'Eau appealed the trial court's judgment, and this court reversed the trial court's judgment and remanded the matter for further proceedings. Poule D'Eau Properties, L.L.C. v. TLC Properties, Inc., 18-1400, p. 9 (La. App. 1st Cir. 6/16/20), 2020 WL 3249294 *5 (unpublished opinion).

On October 19, 2021, Poule D'Eau filed another motion for summary judgment asserting that Lamar's servitude is suspended pursuant to La. C.C. art. 714 due to the lack of consent to the servitude by the Duplantis heirs. As such, Poule D'Eau asserted that Lamar has no legal or contractual right to maintain its advertising signs on the property and should be evicted from the property. Lamar filed an opposition to Poule D'Eau's motion for summary judgment, wherein it pointed out that while Poule D'Eau referenced several documents in its motion for summary judgment, it only attached and filed one exhibit to its motion, being this court's prior opinion. Accordingly, Lamar objected to all referenced documents to the extent that they are not attached to the motion for summary judgment.

Lamar filed a cross-motion for summary judgment on January 4, 2022, asserting that it is entitled to summary judgment dismissing Poule D'Eau's claims. Lamar asserted: the Duplantis heirs knowingly did not take action and their acceptance of Joseph's succession confirmed the servitude agreement and cured their failure to consent prior to Poule D'Eau's ownership; Poule D'Eau cannot establish that Lamar entered or remained on the tract without a legal right; the servitude burdened the entire property upon the Duplantis heirs coming into

4

ownership of the whole tract through the judgment of possession under La. C.C. art. 719; any right of action to annul the servitude is prescribed; and Poule D'Eau had notice of the servitude prior to its acquisition of the property and acquired it subject to the servitude.

The trial court held a hearing on Poule D'Eau's motion for summary judgment and Lamar's cross-motion for summary judgment on May 6, 2022, at the conclusion of which the trial court granted Poule D'Eau's motion and denied Lamar's cross-motion. The trial court subsequently signed a judgment in conformity with its ruling, granting Poule D'Eau's motion for summary judgment, denying Lamar's cross-motion for summary judgment, declaring Poule D'Eau to be the sole owner of all rights over the property and Lamar has no legal right to possess or occupy any portion of the property at issue, and evicting Lamar from the property and requiring it to vacate the premises within thirty days of signing of the trial court's judgment. Lamar now appeals from the trial court's judgment.

## DISCUSSION

### Standard of Review

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). An issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Smith v. Our Lady of the Lake Hospital Inc., 93-2512, p. 27 (La. 7/5/94), 639 So. 2d 730, 751.

The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover can meet its burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical

5

records, written stipulations, and admissions with its motion for summary judgment. La. C.C.P. art. 966(A)(4). The mover's supporting documents must prove the essential facts necessary to carry the mover's burden.

Once the mover properly establishes the material facts by its supporting documents, the mover does not have to negate all of the essential elements of the adverse party's claims, actions, or defenses if the mover will not bear the burden of proof at trial. La. C.C.P. art. 966(D)(1); Babin v. Winn-Dixie Louisiana, Inc., 00-0078, p. 4 (La. 6/30/00), 764 So. 2d 37, 39; Jenkins v. Hernandez, 19-0874, p. 4 (La. App. 1st Cir. 6/3/20), 305 So. 3d 365, 371, writ denied, 20-00835 (La. 10/20/20), 303 So. 3d 315. The moving party must only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1); Mercadel v. State Through Department of Public Safety and Corrections, 18-0415, p. 6 (La. App. 1st Cir. 5/15/19), 2019 WL 2234404 *3 (unpublished opinion). The burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); see also La. C.C.P. art. 966, Comments—2015, comment (j). If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, Article 966(D)(1) mandates the granting of the motion for summary judgment. Babin, 00-0078 at p. 4, 764 So. 2d at 40; Jenkins, 19-0874 at p. 5, 305 So. 3d at 371.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Succession of Hickman v. State Through Board of Supervisors of Louisiana State University Agricultural

6

and Mechanical College, 16-1069, p. 5 (La. App. 1st Cir. 4/12/17), 217 So. 3d 1240, 1244.

**Poule D'Eau's Motion for Summary Judgment**

Lamar asserts that the trial court erred in granting summary judgment in favor of Poule D'Eau because Poule D'Eau failed to carry its burden of proof. Specifically, Lamar asserts that Poule D'Eau attached only one exhibit to its motion for summary judgment, this court's prior opinion, and attempted to reference other documents in the record that were filed in connection with its previous motion for summary judgment but were not filed in connection with the instant motion. It is well-settled that only documents actually filed in support of or in opposition to the motion for summary judgment before the court may be considered by the court on a motion for summary judgment. See La. C.C.P. art. 966(D)(2) and Comments— 2015, comment (k); Brilliant National Services, Inc. v. Travelers Indemnity Company, 21-1472, p. 5 n.7 (La. App. 1st Cir. 9/7/22), 349 So. 3d 606, 611 n.7; see also Alvin Fairburn & Associates, LLC v. Harris, 20-1290, p. 7 (La. App. 1st Cir. 10/18/21), 2021 WL 4843584 *3 (unpublished opinion); Tillman v. Nationwide Mutual Insurance Company, 20-0250, p. 7 n.5 (La. App. 1st Cir. 2/22/21), 321 So. 3d 1017, 1022 n.5, writ denied, 21-00429 (La. 5/25/21), 316 So. 3d 446; Huggins v. Amtrust Insurance Company of Kansas, Inc., 20-0516, p. 5 n.1 (La. App. 1st Cir. 12/30/20), 319 So. 3d 362, 366 n.1. The court cannot consider other materials in the record. La. C.C.P. art. 966, Comments—2015, comment (c) and comment (k); Troncoso v. Point Carr Homeowners Association, 22-0530, p. 9 (La. App. 1st Cir. 1/10/23), __ So. 3d __, __. Additionally, parties may not introduce summary judgment evidence at the hearing. See La. C.C.P. art. 966(A)(4) and (D)(2); see also Tillman, 20-0250 at p. 7 n.5, 321 So. 3d at 1022 n. 5; Huggins, 20-0516 at p. 5 n.1, 319 So. 3d at 366 n.1.

7

As such, the only evidence properly submitted by Poule D'Eau that this court may consider in its *de novo* review of Poule D'Eau's motion for summary judgment is this court's prior opinion. We find that this evidence is insufficient to support the granting of summary judgment in favor of Poule D'Eau and accordingly, we find that the trial court erred in granting Poule D'Eau's motion for summary judgment, declaring Poule D'Eau to be the sole owner of all rights over the property and Lamar has no legal right to possess or occupy any portion of the property at issue and evicting Lamar from the property and requiring it to vacate the premises within thirty days of signing of the trial court's judgment.

## Lamar's Cross-Motion for Summary Judgment

Lamar also asserts that the trial court erred in denying its cross-motion for summary judgment. The denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law. However, where there are cross-motions for summary judgment raising the same issues, this court can review the denial of a summary judgment in addressing the appeal of the grant of the cross-motion for summary judgment. Crochet v. Nick's Refrigeration Sales and Service, Inc., 22-0134, p. 3 n.2 (La. App. 1st Cir. 12/22/22), __ So. 3d __, __. Accordingly, because Lamar's cross-motion for summary judgment raises the same issues as those contained in Poule D'Eau's motion for summary judgment, we will now review the denial of Lamar's motion for summary judgment.

As recognized by the parties, this court's prior opinion, in reversing the trial court's sustaining of the exception raising the objection of no right of action, found that while Poule D'Eau did not have a right of action to assert any claim seeking to nullify the servitude agreement due to the absence of the co-owner Duplantis heirs' consent, it did have a right of action, as owner of the property, to bring an action to evict Lamar for trespassing on its property. Poule D'Eau Properties, L.L.C., 18-

1400 at pp. 6-7, 2020 WL 3249294 at *4-5. The trespass claim, as asserted, depends on Poule D'Eau's ability to show that the execution of the servitude granted by Joseph to Lamar was suspended pursuant to La. C.C. art. 714 and therefore, Lamar's billboards are on Poule D'Eau's property without legal or contractual authority. See Poule D'Eau Properties, L.L.C., 18-1400 at p. 7, 2020 WL 3249294 at *4.

In seeking summary judgment, Lamar asserts that Poule D'Eau is unable to establish its claim in trespass because the suspension of the servitude terminated either before or upon Poule D'Eau's ownership of the property at issue. Louisiana Civil Code article 714 provides:

> A predial servitude on an estate owned in indivision may be established only with the consent of all the co-owners.
>
> When a co-owner purports to establish a servitude on the entire estate, the contract is not null; but, its execution is suspended until the consent of all co-owners is obtained.

Lamar asserts that the Duplantis heirs acquiesced in the servitude and as such, gave their consent, relying on Superior Oil Producing Co. v. Leckelt, 189 La. 972, 988 (La. 1938), 181 So. 462, 467 (finding that consent can be given by acquiescence on the part of the co-owners). In Superior Oil, a co-owner heir entered into a mineral deed with a third party purporting to convey an undivided one-half interest in all minerals that he owned in and on the property. The supreme court found that while there was no evidence that the remaining co-owner heirs consented to the granting of the servitude at the time the deeds were executed, they subsequently consented through their acquiescence in the payment of royalties to the third-party and by entering into lease contracts with the third party, authorizing him to go upon the land to explore for oil. Superior Oil, 181 So. at 467. Furthermore, the supreme court noted that there was an absence of evidence showing any objection on the part of any of the co-owners to the exercise of the servitude until shortly before suit was filed. Superior Oil, 181 So. at 467.

In support of its cross-motion for summary judgment, Lamar submitted an August 2010 letter from the Duplantis heirs, through their attorney, to Lamar whereby the Duplantis heirs asserted that the servitude granted by Joseph was invalid and a July 2011 letter, whereby the Duplantis heirs again reached out to Lamar through their attorney, asserting the invalidity of the servitude and offering, unsuccessfully, to enter into a lease agreement with Lamar. Lamar also submitted a copy of the judgment of possession, placing the Duplantis heirs in possession of Joseph's undivided one-half interest in the property.

From our review of the record, we do not find that Lamar has presented evidence sufficient to meet its burden of establishing that the Duplantis heirs acquiesced to the servitude granted by Joseph to Lamar. The two letters establish that on several occasions following Joseph's death, the Duplantis heirs objected to the servitude, notifying Lamar that they believed the servitude was invalid. Furthermore, while the Duplantis heirs did propose to enter into a lease agreement with Lamar for Lamar's use of the property in exchange for cancellation of the servitude from the public records, no agreement was ever reached. This evidence falls short of the type of evidence present in Superior Oil, and as such, we find that Lamar did not establish that it is entitled to judgment as a matter of law on this issue.[4]

Lamar next asserts that suspension of the servitude was terminated before or upon Poule D'Eau's ownership in accordance with La. C.C. art. 719, which provides:

> Except as provided in Article 718, the successor of the co-owner who has consented to the establishment of a predial servitude, whether on the entire estate owned in indivision or on his undivided part only, occupies the same position as his ancestor. If he becomes owner of a

---

[4] Lamar also asserts that the Duplantis heirs ratified the relatively null servitude agreement. See La. C.C. art. 2031; La. C.C. art. 1843. However, we note that pursuant to La. C.C. art. 1843, tacit ratification occurs "when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation." Again, Lamar has failed to present any evidence that the Duplantis heirs accepted any benefit *of the obligation* entered into by Joseph (i.e., the servitude agreement).

divided part of the estate the servitude burdens that part, and if he becomes owner of the whole the servitude burdens the entire estate.

Lamar asserts that when the Duplantis heirs accepted Joseph's succession and were placed in possession of his undivided one-half interest in the property, the two one-half interests were united in the Duplantis heirs and they acquired ownership of the entire tract. As such, Lamar argues that the Duplantis heirs became the successor of the grantor, Joseph, occupying the same position as him, and upon acquiring ownership of the whole estate, any suspension of the servitude terminated and the servitude burdened the whole estate.

Louisiana Civil Code article 719 was enacted by 1977 La. Acts. No. 514. Prior to that time, La. C.C. art. 742 provided:

> If a coproprietor who has established a servitude, sell his undivided portion to a person, who afterwards, by licitation, becomes owner of the whole, he is, like his vendor, bound to permit the exercise of the servitude on the whole estate.

The revision comments to La. C.C. art. 719 provide that it is "a logical extension of the rule contained in Article 742." La. C.C.P. art. 719, Revision Comments 1977—comment (a). Specifically, Article 719 expands the source provision to provide that the successor of the co-owner is bound to tolerate the servitude if he acquires, by any means, the ownership of a divided part or of the entire estate. La. C.C. art. 719, Revision Comments 1977—comment (b). Louisiana Civil Code articles 714 through 719 are intended to cover all cases in which the co-owner of an estate grants a predial servitude on it or on his undivided part and subsequently acquires the ownership of the entire estate or of a divided part of it whether by licitation or by other transactions. La. C.C. art. 719, Revision Comments 1977—comment (c). Thus, if the grantor of the servitude on the estate owned in indivision acquires the ownership of the entire estate by licitation, sale, donation, or exchange, the servitude that he has granted attaches to the whole. See La. C.C. art. 715; La. C.C. art. 719, Revision Comments 1977—comment (c). If the grantor of

the servitude conveys his undivided part to another person, the transferee incurs the same liabilities as the transferor. See La. C.C. art. 719 and Revision Comments 1977—comment (c).

From a plain reading of the relevant civil code articles, their source provisions, and the 1977 Revision Comments, it is evident that these provisions contemplate a grantor of a servitude on his part who then *subsequently acquires* ownership of the whole estate. Logically, because a successor occupies the same position as his ancestor/grantor, La. C.C. art. 719 applies when a successor to a grantor's part of an estate then *subsequently acquires* ownership of the whole estate. See Fawvor v. Crain, 6 So. 2d 227, 230 (La. App. 1st Cir. 1942) (applying Article 742 of the Louisiana Civil Code of 1870 in finding "if the co-proprietor who has established a servitude sell his undivided interest to a person who *afterwards* becomes the owner of the whole, either by licitaiton or the purchase of the interest of the remaining co-owners who have not granted the servitude, then he is, like his vendor, bound to permit the exercise of the servitude as established by his vendor") (emphasis added); see also Roy v. South Central Bell Telephone Company, 752 F. Supp. 211, 213 (W.D. La. 1990) (extending La. C.C. art. 715 by analogy to apply to plaintiff, who acquired the interest of the grantor of a servitude and then the interest of the non-consenting co-owner to became the owner of the entire estate upon which a former undivided co-owner had granted a predial servitude, and as such, found the entire estate was subject to the servitude).

In the instant case, at the time Joseph granted the servitude to Lamar, he was the owner of an undivided one-half interest in the property and the Duplantis heirs were owners of the remaining undivided one-half interest in the property. When Joseph died and the judgment of possession in his succession proceeding placed the Duplantis heirs in possession of his undivided one-half interest, they acquired ownership of the entire estate. However, this is not the situation contemplated by

12

La. C.C. arts. 714 through 719. As the revision comments note, these articles are intended to cover cases in which the co-owner of an estate grants a predial servitude on it or on his undivided part and *subsequently acquires* the ownership of the entire estate or of a divided part. The Duplantis heirs were already non-consenting co-owners of an undivided one-half interest in the property at the time Joseph granted the servitude to Lamar. As such, even if they were Joseph's successor, they did not acquire the grantor's interest *and then subsequently acquire* ownership of the remaining portion of the estate. They were already owners of the remaining portion. Therefore, we find that La. C.C. art. 719 does not apply to the Duplantis heirs so as to terminate the suspension of the servitude.

Lamar next argues that Poule D'Eau is a successor of Joseph, and as such is bound by the servitude pursuant to La. C.C. art. 719. According to the record, Lamar submitted evidence that Poule D'Eau acquired its interest from an act of sale from one of the Duplantis heirs, Patrick Duplantis, and then by an act of exchange with the remaining Duplantis heirs. As such, it is clear that the transferors, or Poule D'Eau's ancestors in title, were Patrick Duplantis and the remaining Duplantis heirs, not Joseph. See La. C.C. art. 3506; see also La. C.C. art. 719, Revision Comments 1977—comment (c) (noting that *if the grantor* of the servitude *conveys* his undivided part to another person, the *transferee* incurs the same liabilities as the transferor). Accordingly, we find Lamar's argument to be without merit.

Finally, Lamar contends that liberative prescription applies to bar Poule D'Eau's claims. Particularly, Lamar asserts that any suspension of the servitude terminated by operation of law because liberative prescription has accrued on any claim alleging the relative nullity of the servitude agreement. Louisiana Civil Code article 714, however, does not provide a time limitation for the suspension of the servitude. It merely provides that execution of the servitude is suspended until the consent of all of the co-owners is obtained. As such, La. C.C. art. 714 contemplates

13

some action by the grantor or some other party to obtain the consent of the co-owners to terminate any suspension. See Greater Baton Rouge Port Commission v. Morley, 232 La. 87, 96 (La. 1957), 93 So. 2d 912, 915 (finding pursuant to Article 738 of the Civil Code of 1870, the predecessor to current La. C.C. art. 714, that a servitude acquired without the consent of the co-owner is not null but its execution is suspended until such time as the co-owner's consent is obtained either voluntarily or judicially). Accordingly, we find Lamar's argument to be without merit.

## CONCLUSION

For the foregoing reasons, we affirm the portion of the trial court's judgment denying Lamar's cross-motion for summary judgment. We reverse the portions of the trial court's judgment granting Poule D'Eau's motion for summary judgment, declaring Poule D'Eau to be the sole owner of all rights over the property and Lamar has no legal right to possess or occupy any portion of the property at issue, and evicting Lamar from the property and requiring it to vacate the premises within thirty days of signing of the trial court's judgment. We remand this matter to the trial court for further proceedings consistent with this opinion. All costs of the proceeding are assessed equally between the parties.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**